#26890-a-LSW
**2014 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

v.

SHAUNA FIERRO,                            Defendant and Appellee.

* * * *

APPEAL FROM THE MAGISTRATE COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHELLE K. PERCY
Judge
* * * *

MARTY J. JACKLEY
Attorney General

JEFFREY P. HALLEM
KELLY MARNETTE
Assistant Attorneys General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellant.


RONALD A. PARSONS, JR.
DELIA M. DRULEY of
Johnson, Heidepriem & Abdallah, LLP
Sioux Falls, South Dakota

        and

JOSEPH M. KOSEL of
Johns & Kosel, LLC
Lead, South Dakota                        Attorneys for defendant
                                          and appellee.

* * * *

ARGUED ON MAY 28, 2014
OPINION FILED **08/20/14**

#26890

WILBUR, Justice

[¶1.]        In this intermediate appeal, we examine a magistrate court's suppression of blood evidence seized without a warrant pursuant to South Dakota's implied consent statutes. We affirm the suppression of the blood evidence.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]        On the evening of August 4, 2013, Shauna Fierro was riding her motorcycle to her home in Butte County, South Dakota. At approximately 11:18 p.m., South Dakota Highway Patrol Troopers Jerry Kastein and Richard Olauson stopped Fierro after she committed a traffic violation.

[¶3.]        After reviewing Fierro's South Dakota driver's license, Trooper Kastein administered a number of standard sobriety tests and concluded that Fierro did not pass some of them. Fierro was placed under arrest for driving under the influence of alcohol (DUI).

[¶4.]        After making the arrest, Trooper Kastein, reading from a DUI advisement card, informed Fierro that she was required by law to give a sample of her blood. When Fierro specifically asked if she had to submit to a blood withdrawal, Trooper Kastein responded: "Yep, because state law says you have to."

[¶5.]        Both troopers escorted Fierro to the Meade County jail. Trooper Olauson escorted Fierro inside the facility, where she was required to submit to a blood draw performed by a county employee. While being processed, Fierro informed the officers that she wanted to refuse the blood test and consult with an attorney. When the technician first attempted to draw blood from Fierro's arm, she pulled away to avoid it. Ultimately, a sample was obtained.

-1-

[¶6.]     Trooper Kastein made no attempt to obtain consent from Fierro for the blood draw.  And, at the hearing on the motion to suppress, Trooper Kastein remarked:

> **Q:**  Okay.  So just so we're clear, at no time did you give her any choice on whether or not she was going to have blood taken; right?
>
> **A:**  That's correct.

Trooper Kastein also testified that he had received training from his superior officers regarding the United States Supreme Court's decision in *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).

[¶7.]     On August 7, 2013, the State charged Fierro with alternative counts of driving under the influence in violation of SDCL 32-23-1(1) and (2).  On October 11, 2013, Fierro filed a motion to suppress the blood test administration and results.  An evidentiary hearing was held on October 25, 2013.  The magistrate court heard testimony from Trooper Kastein, Trooper Olauson, and Fierro.  The court also had the opportunity to view a video excerpt of the arrest.  Ultimately, the court granted Fierro's motion to suppress.

[¶8.]     On November 4, 2013, the State filed a motion to reconsider the suppression of the blood evidence and attempted to place new evidence into the record by filing a motion for judicial notice with various documents attached.  A hearing on the motion to reconsider was held on November 22, 2013, and no additional evidence was presented.  Again, the court denied the motion for reconsideration and reaffirmed its earlier ruling.  The State's motion for judicial notice was never ruled upon by the court.

#26890

[¶9.]       The court signed and entered its order granting Fierro's motion to suppress on November 27, 2013.  In its findings of fact and conclusions of law entered on December 2, 2013, the court found that Fierro was never asked to consent to the seizure of her blood, that she did not voluntarily consent to the seizure of her blood, and that she refused to voluntarily submit to the seizure of her blood before the procedure was administered at the Meade County jail.  The court also found that there were no exigent circumstances provided by the State.

[¶10.]       The court held: "In light of the *McNeely* ruling, the [c]ourt finds that the State's interpretation of SDCL 32-23-10 in this particular case requiring a mandatory blood withdrawal without a warrant and without proving a valid exception to the warrant requirement is unconstitutional."[1]  The court concluded that the State's warrantless seizure of Fierro's blood violated the Fourth Amendment because the State did not demonstrate that an exception to the warrant requirement applied.  Lastly, the court held that the arresting officer was aware of the *McNeely* ruling at the time of the search and that "[u]nder the particular facts of this case and in consideration of its future deterrent effects, . . . suppression of the evidence [was] an appropriate remedy."

---

1.     In its hearing on November 22, 2013, the court explained:

> In this particular case, requiring a mandatory blood withdrawal without warrant and without proving a valid exception, the [c]ourt finds that to be unconstitutional.
>
> In reviewing the totality of the circumstances in this case, the [c]ourt finds that there was not an exception proven, that there wasn't consent, and there was not exigency.

#26890

[¶11.] On January 13, 2014, this Court entered its order granting the State's petition to appeal from the court's intermediate order. In this appeal, we review:

I. Whether the magistrate court erred by holding that the warrantless search conducted under South Dakota's implied consent statutes was unconstitutional.

II. Whether the magistrate court erred by holding the good faith exception to the exclusionary rule was inapplicable.

## STANDARD OF REVIEW

[¶12.] "We review the [ ] court's grant or denial of a motion to suppress involving an alleged violation of a constitutionally protected right under the de novo standard of review." *State v. Smith*, 2014 S.D. 50, ¶ 14, ___ N.W.2d ___, ___. "The [ ] court's findings of fact are reviewed under the clearly erroneous standard, but we give no deference to the [ ] court's conclusions of law." *Id.* (quoting *State v. Mohr*, 2013 S.D. 94, ¶ 12, 841 N.W.2d 440, 444). And although "[f]actual findings of the lower court are reviewed under the clearly erroneous standard, . . . once those facts have been determined, 'the application of a legal standard to those facts is a question of law reviewed de novo.'" *State v. Heney*, 2013 S.D. 77, ¶ 8, 839 N.W.2d 558, 561-62 (quoting *State v. Hess*, 2004 S.D. 60, ¶ 9, 680 N.W.2d 314, 319).

## DECISION

**I. Whether the magistrate court erred by holding that the warrantless search conducted under South Dakota's implied consent statutes was unconstitutional.**

[¶13.] As to the first issue, the State contends that the court erred as a matter of law in concluding that the United States Supreme Court's holding in *McNeely* controlled, and that as such, the blood draw under the State's implied

-4-

consent statute—SDCL 32-23-10[2]—was unconstitutional.  The State argues that

"[a]pplication of traditional Fourth Amendment analysis compels the conclusion

that the South Dakota Legislature may constitutionally condition the privilege to

drive within the state on a driver providing irrevocable consent to the withdrawal of

blood and other bodily substance[s] following a lawful DUI arrest."

*The Fourth Amendment and blood draws*

[¶14.]          The Fourth Amendment to the United States Constitution guarantees

citizens the right to be free from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons
> or things to be seized.

Likewise, Article VI, § 11 of our state constitution guarantees our citizens the right

to be free from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses,
> papers and effects, against unreasonable searches and seizures

---

2.       SDCL 32-23-10 provides:

> Any person who operates any vehicle in this state is considered
> to have given consent to the withdrawal of blood or other bodily
> substance and chemical analysis of the person's blood, breath, or
> other bodily substance to determine the amount of alcohol in the
> person's blood and to determine the presence of marijuana or
> any controlled drug or substance or any substance ingested,
> inhaled, or otherwise taken into the body as prohibited by
> [SDCL] 22-42-15 or any other substance that may render a
> person incapable of safely driving.  The arresting law
> enforcement officer may, subsequent to the arrest of any
> operator for a violation of [SDCL] 32-23-1, require the operator
> to submit to the withdrawal of blood or other bodily substances
> as evidence.

shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

[¶15.] "The Fourth Amendment's prohibition against unreasonable searches and seizures requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person." *Smith*, 2014 S.D. 50, ¶ 15, ___ N.W.2d at ___ (quoting *Mohr*, 2013 S.D. 94, ¶ 13, 841 N.W.2d at 444). "Warrantless searches are per se unreasonable, apart from a few, [well-delineated] exceptions[,]" *id.* ¶ 15 (citation omitted), and it is the State's burden to prove that the search at issue falls within a well-delineated exception to the warrant requirement. *Hess*, 2004 S.D. 60, ¶ 23, 680 N.W.2d at 324.

[¶16.] This principle applies to the type of search that is the subject of the present appeal, which involves a compelled, warrantless blood draw for alcohol content to be analyzed and used as evidence in a criminal investigation and prosecution. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 1412, 103 L. Ed. 2d 639 (1989) (stating that the United States Supreme Court has "long recognized that a 'compelled intrusion into the body for blood to be analyzed for alcohol content' must be deemed a Fourth Amendment search") (citation omitted). This type of invasion concerns an individual's "most personal and deep-rooted expectations of privacy[.]" *Winston v. Lee*, 470 U.S. 753, 760, 105 S. Ct. 1611, 1616, 84 L. Ed. 2d 662 (1985). "Reasonableness of a search depends on balancing the public's interest in preventing crime with the individual's right to be free from arbitrary and unwarranted governmental intrusions into personal privacy." *State v. Hirning*, 1999 S.D. 53, ¶ 11, 592 N.W.2d 600, 603.

*Exceptions to warrant requirement*

     *a. Exigent circumstances exception to the warrant requirement*

[¶17.]     The exigent circumstances exception is one of the well-delineated exceptions to the warrant requirement. *State v. Zahn*, 2012 S.D. 19, ¶ 30, 812 N.W.2d 490, 499. The United States Supreme Court's decision in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) was the leading decision on blood draws in cases involving DUI investigations. The holding in *Schmerber* approved, under the particular facts of that case,[3] a warrantless blood draw based on the exigent circumstances exception to the warrant requirement. *See id.* at 770-72, 86 S. Ct. at 1835-36. Accordingly, in determining the reasonableness of a warrantless blood draw based on exigent circumstances, a court

---

3.    In *Schmerber*, the defendant driver was involved in an automobile accident. *Id.* at 758, 86 S. Ct. at 1829. The defendant was arrested after being taken to a hospital in order to receive treatment for injuries he suffered in the accident. *Id.* At the direction of a police officer, the defendant's blood was drawn by a physician at the hospital without a warrant or the defendant's consent. *Id.* at 758-59, 86 S. Ct. at 1829. The defendant objected to the admission of the blood evidence at trial. *Id.* The Supreme Court upheld the warrantless blood test as constitutional under the Fourth and Fourteenth Amendments stating: "The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" *Id.* at 770, 86 S. Ct. at 1835-36 (citation omitted). The Supreme Court further elaborated:

> It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Id.* at 772, 86 S. Ct. at 1836.

must consider all of the facts and circumstances of a particular case and base its holding on those facts. *See id.* The State does not dispute the court's factual finding of no exigent circumstances nor does the State contest the court's conclusion of law that no exigent circumstances existed.

### b. Consent exception to the warrant requirement

[¶18.] The State argues that the warrantless blood draw in this case was constitutionally permissible under the consent exception to the warrant requirement. *See Zahn*, 2012 S.D. 19, ¶ 30, 812 N.W.2d at 499 (providing the "well-delineated exceptions" to the warrant requirement, including the consent exception). "Even when police officers have neither probable cause nor a warrant," a search is permissible under the Fourth Amendment if the officers "obtain voluntary consent from someone possessing adequate authority over the area." *State v. Akuba*, 2004 S.D. 94, ¶ 12, 686 N.W.2d 406, 412 (quoting *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990)). *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). "It has been said that consent to conduct a search satisfies the Fourth Amendment, thereby removing the need for a warrant or even probable cause." *Akuba*, 2004 S.D. 94, ¶ 12, 686 N.W.2d at 412 (quoting *State v. Sheehy*, 2001 S.D. 130, ¶ 11, 636 N.W.2d 451, 453).

[¶19.] "For consent to a search to be valid, the totality of the circumstances must indicate that it was voluntarily given[,]" *State v. Almond*, 511 N.W.2d 572, 573 (S.D. 1994), and was not "the product of duress or coercion, express or implied[.]" *Schneckloth*, 412 U.S. at 227, 93 S. Ct. at 2048. The voluntariness of a search based on consent is a factual question "to be determined from the totality of all the

circumstances." *Id.* "Whether the accused knew that he possessed a right to refuse consent also is relevant to determining the voluntariness of the consent, although the State need not prove that defendant knew of the right to refuse consent to show that the consent was voluntary." *State v. Castleberry*, 2004 S.D. 95, ¶ 9, 686 N.W.2d 384, 387 (citing *Schneckloth*, 412 U.S. at 248-49, 93 S. Ct. at 2059). Once given, consent to search may be withdrawn at any time prior to the completion of the search. *See State v. Zachodni*, 466 N.W.2d 624, 629 (S.D. 1991) *abrogated on other grounds by Akuba*, 2004 S.D. 94, ¶ 13, 686 N.W.2d at 412-13 (providing that the consensual search of the defendant's pickup truck did not include a suitcase, which the defendant verbalized his reluctance to allow, amounting to a withdrawal of consent as to all). *See also United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005) (stating that "[o]nce given, consent to search may be withdrawn"); *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir. 1996); Wayne R. LaFave, 4 Search & Seizure § 8.2(f) (5th ed. 2013) (stating "[a] consent to search is not irrevocable, and thus if a person effectively revokes his prior consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent").

[¶20.]    The State's argument that Fierro consented to the compelled, warrantless blood draw without any right to refuse pursuant to SDCL 32-23-10 does not fit within the consent exception to the warrant requirement. The court's findings of fact confirm that Fierro did not consent to the withdrawal of her blood and the State does not dispute these factual findings. The record demonstrates that Fierro verbally and physically refused to provide a sample. And even though a

blood sample was ultimately taken from Fierro, we have previously held that the State's burden to show free and voluntary consent is not met by the submission to authority. *Castleberry*, 2004 S.D. 95, ¶ 10, 686 N.W.2d at 387. These actions taken in their totality can hardly be taken as "consent" by constitutional standards,[4] and furthermore, even if consent were actually given, Fierro verbally and physically revoked such consent by her actions.

> c. *"Special needs" exception to the warrant requirement*

[¶21.] Additionally, the State contends that the warrantless seizure of Fierro's blood is permissible under the "special needs" exception to the warrant requirement. In delineating the use of this exception, the United States Supreme Court has explained that it only applies "when special needs *beyond the normal need for law enforcement*, make the warrant and probable-cause requirement impracticable." *Skinner*, 489 U.S. at 619, 109 S. Ct. at 1414 (citation omitted)

---

4. As noted previously, the State asserts that the Legislature may constitutionally condition the privilege to drive within the state on a driver providing irrevocable consent to the withdrawal of blood and other bodily substances following a lawful DUI arrest. To this end, however, the Supreme Court, in another context, has stated:

> [A]s a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583, 593-94, 46 S. Ct. 605, 607, 70 L. Ed. 1101 (1926).

(emphasis added). *See, e.g., Ferguson v. City of Charleston*, 532 U.S. 67, 82-83, 121 S. Ct. 1281, 1291-92, 149 L. Ed. 2d 205 (2001) (invalidating nonconsensual testing of pregnant women for illicit drug use because "the immediate objective of the searches was to generate evidence for *law enforcement purposes*").

[¶22.] We disagree with the State's argument that the seizure of Fierro's blood falls under this exception to the warrant requirement. The primary purpose of the warrantless seizure of Fierro's blood was evidentiary and prosecutorial. *Peterson v. State*, 261 N.W.2d 405, 408 (S.D. 1977) (stating that in addition to "a fair, efficient and accurate system of detection and prevention of drunken driving . . . [t]he immediate purpose of . . . the implied consent law is to obtain the best evidence of blood and alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated") (citation omitted). The State also concedes this point in its brief: "The immediate purpose of the implied consent statute is to obtain the best evidence of blood alcohol content at the time a person reasonably believed to be driving while intoxicated is arrested."[5] Therefore, based

---

5.     The State also asserts an "implied consent search" is constitutionally reasonable under the factors expressed in *McGann v. Northeast Illinois Regional Commuter Railroad Corp.*, 8 F.3d 1174, 1181 (7th Cir. 1993). In *McGann*, the Seventh Circuit stated:

> Generally, in deciding whether to uphold a warrantless search on the basis of implied consent, courts consider whether (1) the person searched was on notice that undertaking certain conduct, like attempting to enter a building or board an airplane, would subject him to a search, (2) the person voluntarily engaged in the specified conduct, (3) the search was justified by a "vital interest", (4) the search was reasonably effective in securing the interests at stake, (5) the search was only as intrusive as necessary to further the interests justifying the search and (6)
>
> (continued . . .)

on this set of facts, there are no "'special needs' beyond normal law enforcement that may justify departure[ ] from the usual warrant and probable-cause requirements." *Skinner*, 489 U.S. at 620, 109 S. Ct. at 1415 (citation omitted).

### d. SDCL 32-23-10

[¶23.] The State contends that SDCL 32-23-10 permits compelled, warrantless blood draws in every case. SDCL 32-23-10, by itself, does not provide an exception to the search warrant requirement in South Dakota and any argument to the contrary cannot be reconciled with the United States Supreme Court and this Court's Fourth Amendment warrant requirement jurisprudence. We have never held that SDCL 32-23-10, by itself, constitutes one of the "few specifically established and well-delineated exceptions" to the Fourth Amendment warrant requirement and decline to do so today. *See Mincey v. Arizona*, 437 U.S. 385, 390,

---

(. . . continued)

> the search curtailed, to some extent, unbridled discretion in the searching officers. *See, e.g.*, *McMorris,* 567 F.2d at 899-900; *United States v. Skipwith,* 482 F.2d 1272, 1275 (5th Cir. 1973); *Collier v. Miller,* 414 F. Supp. 1357, 1362 (S.D. Tex. 1976); 2 Ringel, *supra* at § 16.2(e). We decline to regard these six factors as dispositive criteria. Rather, these factors should be examined carefully in each case in evaluating the totality of the circumstances and in respecting the consideration that the courts not unnecessarily extend exceptions to the warrant requirement.

*Id.*

The State's analysis of the search in this case under the *McGann* factors is unpersuasive. *McGann* and cases cited by *McGann* in support of its factor-analysis are administrative searches conducted for reasons other than normal law enforcement purposes. Here, as the State concedes, the search and seizure of Fierro's blood under SDCL 32-23-10 was conducted to obtain the "best evidence of blood alcohol content" for purposes of criminal prosecution. Therefore, the factor-analysis in *McGann* is not applicable to the circumstances in this appeal.

98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)). Furthermore, our precedent is clear that the Legislature cannot enact a statute that would preempt a citizen's constitutional right, such as a citizen's Fourth Amendment right. *See Poppen v. Walker*, 520 N.W.2d 238, 242 (S.D. 1994), *superseded by constitutional amendment,* November 8, 1994, amendment to S.D. Const. art. III, § 25, *as recognized in Brendtro v. Nelson*, 2006 S.D. 71, 720 N.W.2d 670 (providing that "[t]he legislature cannot define the scope of a constitutional provision by subsequent legislation"); *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 43 n.10, 827 N.W.2d 55, 71 n.10 (stating "[a]s the Constitution is the 'mother law,' any statutory framework must conform to it and not vice versa") (quoting *Poppen*, 520 N.W.2d at 242). Without more, SDCL 32-23-10 is not an exception to the warrant requirement.

[¶24.]    The State has failed to provide this Court with an exception to the warrant requirement that permits the compelled, warrantless blood draw that occurred in this case. Accordingly, this type of blood draw violates the warrant requirement of the Fourth Amendment of the federal constitution and Article VI, § 11 of our state constitution.

> **II.    Whether the magistrate court erred by holding the good faith exception to the exclusionary rule was inapplicable.**

[¶25.]    We now examine whether suppression is the appropriate remedy for this Fourth Amendment violation. *See Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2426, 180 L. Ed. 2d 285 (2011) (explaining that the Fourth Amendment "says nothing about suppressing evidence obtained in violation of [its] command. That rule—the exclusionary rule—is a 'prudential' doctrine . . . created by [the

United States Supreme] Court to compel respect for the constitutional guaranty")
(citations omitted). The State argues that the blood sample and test results are
admissible pursuant to the good faith exception to the exclusionary rule based upon
the officer's reliance on SDCL 32-23-10. "We examine the good faith exception de
novo." *State v. Sorensen*, 2004 S.D. 108, ¶ 9, 688 N.W.2d 193, 197.

[¶26.] The exclusion or suppression of evidence is "'not a personal
constitutional right,' nor is it designed to 'redress the injury' occasioned by an
unconstitutional search." *Davis*, ___ U.S. at ___, 131 S. Ct. at 2426 (quoting *Stone v.
Powell*, 428 U.S. 465, 486, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976)). "The rule's sole
purpose . . . is to deter future Fourth Amendment violations." *Id.* "Where
suppression fails to yield appreciable deterrence, exclusion is clearly . . .
unwarranted." *Id.* at ___, 131 S. Ct. at 2426-27 (citation omitted). "For exclusion to
be appropriate, the deterrence benefits of suppression must outweigh its heavy
costs." *Id.* at ___, 131 S. Ct. at 2427. "Because the goal of deterrence will not
always be advanced by excluding relevant, though illegally seized, evidence, the
Supreme Court has identified several exceptions to the exclusionary rule."
*Sorenson*, 2004 S.D. 108, ¶ 8, 688 N.W.2d at 197 (citation omitted).

[¶27.] The United States Supreme Court and this Court have applied the
good faith exception to the exclusionary rule in a variety of different contexts.[6] In

---

6. The State cites to the United States Supreme Court's decision in *Illinois v.
Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987), for the
proposition that suppression is not an appropriate remedy when the officer
reasonably relied on a subsequently invalidated statute as authority for his
search. In *Krull*, the United States Supreme Court extended the good faith

(continued . . .)

*Davis v. United States*, the United States Supreme Court held that an officer's

objectively reasonable reliance on binding court precedent at the time of the search

or seizure, even if the precedent is later overruled, satisfies the good faith exception

to the exclusionary rule. *Id.* at ___, 131 S. Ct. at 2428-29. In so holding, the Court

noted that "[p]olice practices trigger the harsh sanction of exclusion only when they

are deliberate enough to yield meaningful deterrence, and culpable enough to be

worth the price paid by the judicial system." *Id.* at ___, 131 S. Ct. at 2428 (citation

---

(. . . continued)
exception to searches conducted in reasonable reliance on subsequently invalidated statutes. As the Court explained:

> The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the Court's comment in Leon: "Penalizing the officer for the legislature's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."

*Krull*, 480 U.S. at 349-50, 107 S. Ct. at 1167 (citation omitted). In sum, "[a] statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws." *Id.* at 355, 107 S. Ct. at 1170. "Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.*

Here, we do not "invalidate the statute," but rather we hold that the search in this case violates the warrant requirement of both the federal and state constitutions. Therefore, the State's reliance on *Krull* is not persuasive.

omitted). The Court further reaffirmed "that the harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity." *Id.* at ___, 131 S. Ct. at 2429 (citation omitted). "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.*

[¶28.] Following the United States Supreme Court's decision in *Schmerber*, this Court adopted the following:

> [B]odily substance samples [are] not subject to the exclusionary rule under the Fourth Amendment if they are taken (1) incident to a lawful arrest, (2) by a reliable and accepted method of obtaining such sample, (3) in a reasonable, medically approved manner, and (4) where there is probable cause to believe that the evidence sought exists. [*Schmerber*] *also held that the elimination of alcohol by natural bodily functions presents exigent circumstances which obviate the necessity of obtaining a search warrant.*

*State v. Hartman*, 256 N.W.2d 131, 134 (S.D. 1977) (citing *Schmerber*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908) (emphasis added). This rule was applied by this Court and guided the practice of law enforcement officers for several decades. *See, e.g., State v. Mattson*, 2005 S.D. 71, ¶ 44, 698 N.W.2d 538, 552; *State v. Hanson*, 1999 S.D. 9, ¶ 28, 588 N.W.2d 885, 891; *State v. Tucker*, 533 N.W.2d 152, 154 (S.D. 1995); *State v. Lanier*, 452 N.W.2d 144, 145 (S.D. 1990); *State v. Parker*, 444 N.W.2d 42, 44 (S.D. 1989). These authorities held that the rapid dissipation of alcohol in the body was a per se exigent circumstance that provided law enforcement the authority to conduct warrantless blood draws. Recently, however, the Supreme Court's decision in *McNeely* expressly rejected a per se rule that the natural dissipation of alcohol in the blood alone is an exigent circumstance obviating the

need for a warrant prior to a blood draw. *See id.* ___ U.S. at ___, 133 S. Ct. at 1556. Instead, the Supreme Court relied on *Schmerber*'s case-by-case analysis in reviewing exigent circumstances based on the totality of the circumstances and held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at ___, 133 S. Ct. at 1568. The Supreme Court's holding in *McNeely* was a shift from this Court's previous interpretation of *Schmerber*. *See Siers v. Weber*, 2014 S.D. 51, ¶ 15, ___ N.W.2d ___ (discussing South Dakota's pre-*McNeely* interpretation and application of *Schmerber*).

[¶29.]        Here, Trooper Kastein arrested and drew Fierro's blood on August 4, 2013—approximately four months after the United States Supreme Court released its decision in *McNeely*. Trooper Kastein testified that he was aware of the *McNeely* decision and had received new training as to its effect. When, as here, law enforcement is aware of new case precedent and has received training as to the effect of the new precedent, subsequent activity conducted in accordance with prior, contrary, precedent cannot be said to be "objectively reasonable[.]" *Davis,* __ U.S. at __, 131 S. Ct. at 2429. Therefore, in order to promote, meaningful deterrence of this type of law enforcement conduct, the appropriate remedy is one of suppression.[7]

---

7.    Likewise, the State's request to allow the case to proceed under SDCL 32-23-7 is unpersuasive. Fierro's blood sample was obtained as a result of a constitutional violation. Thus, suppression is the appropriate remedy. *See State v. Herrmann*, 2002 S.D. 119, ¶ 19, 652 N.W.2d 725, 731 (stating that "failure to comply with the procedure set forth in the implied consent statutes does not require the suppression of the test results, *as long as the testing procedure complied with the driver's constitutional rights*") (emphasis added).

**CONCLUSION**

[¶30.]    Based on the foregoing, we affirm the court's grant of the suppression motion.

[¶31.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.