#27765-a-LSW

**2016 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,      Plaintiff and Appellee,

  v.

NICHOLAS R. KLEVEN,       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GREGORY J. STOLTENBURG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota      Attorneys for plaintiff
             and appellee.


DONALD M. MCCARTY
JENNIFER GOLDAMMER of
Helsper, McCarty, Rasmussen, PC
Brookings, South Dakota     Attorneys for defendant
             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 7, 2016

OPINION FILED **11/22/16**

#27765

WILBUR, Justice

[¶1.]        After being arrested and charged with driving under the influence, defendant moved to suppress the evidence. The circuit court denied defendant's motion, concluding that an exception to the warrant requirement applied because the officer acted in his function as a community caretaker. We affirm.

## Background

[¶2.]        At approximately 1:00 a.m. on January 21, 2015, Officer Marci Gebers observed a vehicle parked on the 400 block of Third Street in downtown Brookings, South Dakota. The vehicle was running, and Officer Gebers observed a man in the driver's seat, later identified as Nicholas Kleven. Officer Gebers testified that she believed the occupant was either looking at his mobile phone or waiting for someone. Officer Gebers explained that she did not approach the vehicle to make any further observations.

[¶3.]        At approximately 1:40 a.m., Officer Adam Smith drove past the same vehicle previously observed by Officer Gebers. Like Officer Gebers, Officer Smith observed that the vehicle was running and there was a man in the driver's seat. Officer Smith believed the occupant may have been looking at his mobile phone. Officer Smith drove past Kleven's vehicle, noted the license plate number, and requested a license plate check. Officer Gebers overheard the request on the radio and informed Officer Smith that she had observed the same vehicle at 1:00 a.m.

[¶4.]        Officer Smith then parked his patrol vehicle in a parking lot one block away with a line of sight on Kleven's vehicle. Shortly after 2:00 a.m., Officer Smith moved his patrol vehicle directly behind Kleven's vehicle. He exited his patrol

vehicle and approached Kleven's driver's-side window. He observed Kleven sitting in the driver's seat and believed Kleven was either sleeping or passed out. Officer Smith radioed for another officer to park a patrol vehicle in front of Kleven's vehicle. Officer Smith testified that he could not tell if the occupant had the vehicle in drive or park and made the request out of his concern that he would startle the occupant and cause the occupant to accidentally accelerate his vehicle.

[¶5.] After the second officer parked a patrol vehicle in front of Kleven's vehicle, Officer Smith knocked on Kleven's driver's-side window several times. Kleven briefly opened his eyes and looked toward the window. Kleven did not acknowledge Officer Smith. Kleven put his head back down. Officer Smith testified that he was concerned and opened Kleven's driver's-side door. Immediately, Officer Smith smelled the odor of alcohol. Kleven was subsequently arrested and charged with driving under the influence.

[¶6.] On April 7, 2015, Kleven filed a motion to suppress. Kleven asserted that Officer Smith did not have reasonable suspicion to support the intrusion. The circuit court held an evidentiary hearing on July 21, 2015. Officers Gebers and Smith testified. At the conclusion of the hearing, the court issued an oral ruling. It held that the circumstances justified Officer Smith's investigation under the community caretaker exception to the warrant requirement. The court denied Kleven's motion to suppress. It issued findings, conclusions, and an order. Kleven appeals, asserting one issue for our review: whether the circuit court erred when it denied his motion to suppress on the basis that the community caretaker exception applied.

## Standard of Review

[¶7.] "We review the circuit court's grant or denial of a motion to suppress involving an alleged violation of a constitutionally protected right under the de novo standard of review." *State v. Smith*, 2014 S.D. 50, ¶ 14, 851 N.W.2d 719, 723. We review the circuit court's factual findings for clear error. *State v. Mohr*, 2013 S.D. 94, ¶ 12, 841 N.W.2d 440, 444. Once the facts have been determined, we give no deference to the court's application of a legal standard to those facts. *State v. Fierro*, 2014 S.D. 62, ¶ 12, 853 N.W.2d 235, 239. Those questions of law are reviewed de novo. *Id.*

## Analysis

[¶8.] This case concerns whether the community caretaker exception to the warrant requirement applies. The United States Supreme Court first recognized the exception in *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). It explained that law enforcement officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S. Ct. at 2528. We adopted the community caretaker exception in *State v. Rinehart*, 2000 S.D. 135, 617 N.W.2d 842. We said that "under appropriate circumstances a law enforcement officer may be justified in stopping a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity." *Id.* ¶ 7 (quoting *State v. Brown*, 509 N.W.2d 69, 71 (N.D. 1993)). The officer must have a "demonstrable reason to

believe that a driver may be unfit to drive for medical or other reasons" to justify a temporary stop "for the limited purpose of investigating the person's well-being." *Id.* The exception "should be cautiously and narrowly applied in order to minimize the risk that it will be abused or used as a pretext for conducting an investigatory search for criminal evidence." *Id.* ¶ 10 (quoting *Commonwealth v. Waters*, 456 S.E.2d 527, 530 (Va. Ct. App. 1995)).

[¶9.] Kleven asserts that the circuit court erred when it concluded that Officer Smith acted in his community caretaker capacity. He argues that Officer Smith could not articulate a demonstrable reason to be concerned about Kleven's well-being. According to Kleven, Officer Smith relied on the community caretaker function after the fact, when in reality, Officer Smith detained Kleven and forced an interaction solely to satisfy Officer Smith's curiosity as to why Kleven remained parked. He emphasizes that Officer Smith ran a check on Kleven's license plate and blocked Kleven's vehicle from being able to leave. These circumstances, Kleven argues, evince that Officer Smith's check on Kleven's well-being was not "totally divorced" from Officer Smith's role as a law enforcer. To conclude otherwise, according to Kleven, would "have serious ramifications"—it would allow law enforcement to justify "every stop by stating that they were acting in their community caretaker capacity[.]"

[¶10.] In *State v. Deneui*, we recognized that, although many courts apply the community caretaker exception to the warrant requirement, "[n]o single test has been adopted by a majority of courts." 2009 S.D. 99, ¶ 36, 775 N.W.2d 221, 237. We examined the tests applied by other courts and took "the best insights from the

diverse authorities dealing with this exception[.]" *Id.* ¶ 41. Those best insights include: "the purpose of community caretaking must be the objectively reasonable independent and substantial justification for the intrusion; the police action must be apart from the detection, investigation, or acquisition of criminal evidence; and the officer should be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion." *Id.* We noted that "the community caretaking function is more akin to a health and safety check." *Id.*

[¶11.]          Here, the circuit court found that Officer Smith was justified in stopping near Kleven's vehicle and making contact with Kleven to determine if Kleven needed assistance. Based on our review, we conclude that Officer Smith had an objectively reasonable basis to investigate Kleven's well-being. We do not construe Officer Smith's run of Kleven's license plate number or his request that a patrol car park in front of Kleven's vehicle as proof that Officer Smith did not act in his role as a community caretaker. To do so would ignore that law enforcement officers serve multiple functions. "The law does not demand that an alert police officer must suppress his or her training and investigatory experience in carrying out the myriad of community caretaking functions society expects police officers to undertake for its protection." *Commonwealth v. Fisher*, 13 N.E.3d 629, 633 (Mass. Ct. App. 2014). As we recognized in *Deneui*, "[m]odern society has come to see the role of police officers as more than basic functionaries enforcing the law. From first responders to the sick and injured, to interveners in domestic disputes, and myriad instances too numerous to list, police officers fulfill a vital role where no other government official can." 2009 S.D. 99, ¶ 49, 775 N.W.2d at 242; *see also State v.*

*Kramer*, 759 N.W.2d 598, 610 (Wis. 2009); *see also Rist v. N.D. Dep't of Transp.*, 665 N.W.2d 45, 49 (N.D. 2003).

[¶12.] Officer Gebers and Officer Smith may not have had a cause for concern at 1:00 or 1:40 a.m. when they noticed Kleven's vehicle parked while running. During both of those observations, it appeared to the officers that Kleven was looking at his mobile phone. However, at 2:00 a.m., the vehicle was still running, remained parked in the same spot, *and* the occupant looked to be sleeping or passed out. The fact Kleven could have been simply sleeping is of no consequence. *See Deneui*, 2009 S.D. 99, ¶ 42, 775 N.W.2d at 239. Officer Smith had reason to walk up to Kleven's driver's-side window and attempt to make contact. Officer Smith knocked on the driver's-side window several times. Kleven did not acknowledge Officer Smith. He looked up for a moment and put his head back down. "These circumstances presented a crucial moment of judgment for" Officer Smith. *See Deneui*, 2009 S.D. 99, ¶ 49, 775 N.W.2d at 242. Should he act to ensure Kleven is not in need of assistance—conduct a health and safety check? We think so. Under the circumstances, Officer Smith had sufficient reason to act. The circuit court did not err when it denied Kleven's motion to suppress, concluding that the community caretaker exception to the warrant requirement applied.

[¶13.] Affirmed.

[¶14.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.