#28783-a-MES
**2019 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

REAGAN SHORT BULL,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFF W. DAVIS
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


LINTON T. CLARKE, III of
Office of the Public Defender
  for Pennington County
Rapid City, South Dakota                  Attorneys for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 29, 2019
OPINION FILED **05/15/19**

#28783

SALTER, Justice

[¶1.] Reagan Short Bull, Jr. was convicted in magistrate court of driving under the influence after the magistrate judge denied his motion to suppress evidence obtained during a vehicle stop. The circuit court affirmed the magistrate's denial of his motion to suppress, and Short Bull appeals. We affirm.

## Background

[¶2.] At approximately 3:00 a.m. on February 25, 2017, Rapid City 911 dispatch received a call from the night clerk at the Country Inn and Suites hotel in Rapid City. The clerk relayed that she had received a call from a female in Room 315 asking for help. Believing the call to be a report of a domestic disturbance, the clerk requested an officer's assistance to help her investigate. After ending the call, the clerk called dispatch back a short while later to advise that the female caller from Room 315 was in the lobby. The female had confirmed that it was a domestic dispute and relayed that the male was still in the room. The female then left the hotel.

[¶3.] Officer Richard Holt, a 23-year veteran of the Rapid City Police Department, was on patrol near the Country Inn and Suites and responded within moments to the initial dispatch. As he was pulling into the parking lot of the hotel, dispatch advised that the female had left the hotel and was in the parking lot with "unknown description of vehicle or direction of travel." Officer Holt surveyed the front parking lot in his patrol vehicle, but he did not observe any pedestrian or traffic movement. However, as he pulled into the rear parking lot, he encountered a

-1-

black SUV leaving the lot. He followed the SUV around to the front parking lot and activated his lights and siren.

[¶4.] An adult male, later identified as Reagan Short Bull, emerged from the SUV with his keys in his hand before Officer Holt reached his vehicle. Officer Holt approached Short Bull and asked what he was doing. Short Bull advised that he was moving his car from the back lot to the front lot and mentioned he had been in a fight with his girlfriend, who, it appeared, was not in the vehicle. Officer Holt observed that Short Bull was stumbling and emitting a strong smell of intoxicants. Short Bull confirmed to Officer Holt that he was staying in Room 315 and identified his girlfriend by name. He then told Officer Holt he had to use the restroom, and Officer Holt accompanied Short Bull back into the hotel.

[¶5.] Officer Britany Vogel arrived to assist Officer Holt and observed Short Bull leaving the restroom. She noted that Short Bull was "unsteady on his feet and stumbling" with "red blood shot eyes, slurred speech, and a strong odor of an alcoholic beverage coming from his person." Short Bull told Officer Vogel that he could not complete field sobriety tests because he was intoxicated. Officer Vogel placed Short Bull under arrest, handcuffed him, and searched him. She then transported him to the Pennington County Jail. Short Bull consented to a blood draw, which yielded a result of 0.264 percent alcohol by weight. He was charged with alternative counts of driving while under the influence. *See* SDCL 32-23-1(1) to (2).

[¶6.] Short Bull moved the magistrate court to suppress all evidence and statements obtained during the stop. He claimed the stop was unreasonable under

the Fourth Amendment because Officer Holt lacked reasonable and articulable suspicion to initiate the stop. At the hearing on Short Bull's motion to suppress, Officer Holt testified that when he entered the hotel parking lot, he was "looking for a female, possible victim or a female in distress that . . . dispatch said [had] left the . . . building and went into the parking lot." Officer Holt further explained that there were no people or vehicles moving in the parking lot except the black SUV, and he could not see inside the SUV's tinted windows to determine if there was a person in distress in the vehicle. Officer Holt acknowledged that he did not know whether a crime or injury had occurred in Room 315 to cause the woman to request help from the front desk—just that there was a disturbance. He also acknowledged that he did not observe Short Bull driving erratically or committing traffic violations during the short time he followed Short Bull in the hotel parking lot.

[¶7.] In its post-hearing brief, the State argued that Officer Holt had reasonable suspicion of criminal activity to stop Short Bull's vehicle. It also contended the stop was justified under the community caretaker exception to the Fourth Amendment's warrant requirement. The magistrate judge agreed and denied Short Bull's motion to suppress, finding the existence of "reasonable, articulable suspicion to detain the vehicle." The magistrate judge also determined that the stop was justified as a law enforcement community caretaking function and exigent circumstances.

[¶8.] Following a bench trial on July 11, 2018, the magistrate court convicted Short Bull of driving under the influence-first offense and sentenced him to 90 days in jail with 90 days suspended, revoked his driver's license for 30 days,

and assessed court costs. *See* SDCL 32-23-2. Short Bull appealed his conviction to circuit court, arguing, among other things, that Officer Holt lacked reasonable suspicion of criminal activity and that the community caretaking exception did not apply because the basis for the stop was "not totally divorced from the detection, investigation, or acquisition of evidence[.]" The circuit court affirmed the magistrate judge's denial of Short Bull's motion to suppress and his conviction, stating in its oral decision that

> when [Officer Holt is] aware that there's a possible domestic disturbance . . . in the parking lot [at] that time of morning [when] no one else is moving other than the vehicle that Mr. Short Bull ended up driving, I think he had a reasonable articulable suspicion to stop that vehicle and determine if a lady was present or not or there was something going on that required law enforcement intervention.

[¶9.]     On appeal to this court, Short Bull again challenges the denial of his motion to suppress, but confines his argument solely to the claim that Officer Holt lacked reasonable suspicion of criminal activity.

## Analysis

[¶10.]     "We review the circuit court's grant or denial of a motion to suppress involving an alleged violation of a constitutionally protected right under the de novo standard of review." *State v. Kleven,* 2016 S.D. 80, ¶ 7, 887 N.W.2d 740, 742 (quoting *State v. Smith*, 2014 S.D. 50, ¶ 14, 851 N.W.2d 719, 723). "The court's findings of fact are reviewed under the clearly erroneous standard, but we give no deference to the court's conclusions of law." *State v. Fischer*, 2016 S.D. 12, ¶ 10, 875 N.W.2d 40, 44 (quoting *State v. Fierro*, 2014 S.D. 62, ¶ 12, 853 N.W.2d 235, 239).

*Community Caretaker Exception*

[¶11.] "The Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution protect individuals from unreasonable searches and seizures." *State v. Chase*, 2018 S.D. 70, ¶ 6, 919 N.W.2d 207, 209 (quoting *State v. Walter*, 2015 S.D. 37, ¶ 7, 864 N.W.2d 779, 782). The Fourth Amendment's textual reference to the issuance of "[w]arrants" has been interpreted to state a general principle that police officers "must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure[.]" *Walter*, 2015 S.D. 37, ¶ 7, 864 N.W.2d at 782 (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968)). Despite this "strong preference" for a warrant, certain exceptional warrantless searches and seizures are, nevertheless, reasonable. *See id.*, 2015 S.D. 37, ¶ 6, 864 N.W.2d at 781 (quoting *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).

[¶12.] For instance, a warrant is not required to effect a temporary seizure of a vehicle by means of a traffic stop. *State v. Bowers*, 2018 S.D. 50, ¶ 10, 915 N.W.2d 161, 164 (citing *State v. Burkett*, 2014 S.D. 38, ¶ 45, 849 N.W.2d 624, 635). Indeed, "the factual basis needed to support a traffic stop is minimal." *State v. Chavez*, 2003 S.D. 93, ¶ 15, 668 N.W.2d 89, 95. "All that is required is that the police officer has 'a reasonable suspicion to stop an automobile.'" *Id.* (quoting *State v. Barton*, 2001 S.D. 52, ¶ 13, 625 N.W.2d 275, 279). "While the stop may not be the product of mere whim, caprice or idle curiosity, it is enough that the stop is based upon 'specific and articulable facts, which taken together with rational inferences from

those facts, reasonably warrant [the] intrusion.'" *Id.* ¶ 16, 668 N.W.2d at 95 (quoting *State v. Herrboldt*, 1999 S.D. 55, ¶ 7, 593 N.W.2d 805, 808).

[¶13.] Although this "specific and articulable facts" standard has most often been applied in the context of criminal investigations, its use has not been exclusively connected with the detection of criminal activity. We have held that police officers may undertake a warrantless search or seizure when they are acting within their roles as "community caretakers" and are able to "articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion." *Kleven*, 2016 S.D. 80, ¶ 10, 887 N.W.2d at 743 (quoting *State v. Deneui*, 2009 S.D. 99, ¶ 41, 775 N.W.2d 221, 239).

[¶14.] The community caretaker concept traces its genesis to the United States Supreme Court's decision in *Cady v. Dombrowski*, and the recognition that local law enforcement officers often exercise "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." 413 U.S. 433, 441, 93 S. Ct. 2523, 2528, 37 L. Ed. 2d 706 (1973). We have described the realities associated with law enforcement's community caretaking role in the following terms:

> Modern society has come to see the role of police officers as more than basic functionaries enforcing the law. From first responders to the sick and injured, to interveners in domestic disputes, and myriad instances too numerous to list, police officers fulfill a vital role where no other government official can. Lives often depend upon their quick exercise of pragmatic wisdom.

*Deneui*, 2009 S.D. 99, ¶ 49, 775 N.W.2d at 242.

[¶15.] Because the potential exists for police officers to chance upon evidence of criminal activity while acting as community caretakers, "the community caretaking exception should be cautiously and narrowly applied in order to minimize the risk that it will be abused or used as a pretext for conducting an investigatory search for criminal evidence." *State v. Rinehart*, 2000 S.D. 135, ¶ 10, 617 N.W.2d 842, 844 (quoting *Commonwealth v. Waters*, 456 S.E.2d 527, 530 (Va. Ct. App. 1995)). Within the guidance of this admonition, we have upheld a warrantless stop or temporary seizure of a vehicle under the community caretaker exception in two decisions.

[¶16.] In *Rinehart*, we held that a police officer's decision to stop a vehicle traveling at an "excessively slow speed" was justified by reasonable concerns about "a medical emergency or an automotive malfunction." 2000 S.D. 135, ¶¶ 8-9, 617 N.W.2d at 844. We concluded that the community caretaker exception permitted the stop to "provide assistance, without needing any basis to suspect criminal activity." *Id.* ¶ 7, 617 N.W.2d at 844 (quoting *State v. Brown*, 509 N.W.2d 69, 71 (N.D. 1993)).

[¶17.] Similar caretaking reasons supported the reasonableness of an officer's intervention with a man in the driver's seat of a parked car in *Kleven*, 2016 S.D. 80, ¶¶ 2-5, 887 N.W.2d at 741. Officers had observed the man awake and in no apparent distress sitting in the parked car with the engine running at 1:00 a.m. and 1:40 a.m. *Id.* When they observed him at 2:00 a.m., however, the man in the still-running parked car appeared to be "sleeping or passed out[,]" prompting the police

officer to undertake a health and safety check. *Id.* We held that the officer "had sufficient reason to act." *Id.*

[¶18.] Applying these principles here, we conclude that Officer Holt was acting in his community caretaking role when he stopped Short Bull's vehicle in the hotel parking lot. The information relayed to him described a potentially dangerous situation. The dispatcher advised Officer Holt of a "disturbance" at the hotel, which he could reasonably infer was a domestic disturbance involving a couple. Domestic disputes can, in some instances, escalate into violent confrontations involving injury or death to one or both parties. *See United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010) ("[D]omestic disputes often involve high emotions and can quickly escalate to violence").

[¶19.] Officer Holt was nearby when he heard the dispatch call of a disturbance and arrived in a few moments only to learn that the "female half" of the dispute had left the hotel. The dispatcher advised that the female was in the parking lot, but her "vehicle and direction [were] unknown." Officer Holt drove through the front and rear hotel parking lots and discovered no pedestrians and only one vehicle leaving the area. The vehicle, which turned out to be Short Bull's, had dark, tinted windows, and it was reasonable for Officer Holt to infer that the woman who had been a party to the disturbance may be in the vehicle and in need of assistance. At the suppression hearing, Officer Holt described the decision to stop the SUV:

> **[State]:** [W]hen you witnessed this black SUV when you were pulling into the parking lot, what about it made you think that there was a connection between the call you were investigating with the young woman who needed help?

> **[Officer Holt]:** It was reported to me that the female had left the building into the parking lot. It was apparent she was not in the front parking lot. When I pulled around to the back the only person back there was the black SUV that was moving and there was no one else in the parking lot so it was reasonable to me to believe that the vehicle's involved in the disturbance[,] and so I stopped the vehicle to check her welfare.
>
> **[State]:** So you believed that the . . . female who reportedly was leaving might have been in that vehicle . . .
>
> **[Officer Holt]:** That's when I came into contact with the vehicle and stopped the vehicle.

[¶20.]     Officer Holt did not stop Short Bull's vehicle to investigate a criminal offense or to gather evidence. He had no facts that would lead him to believe the driver was impaired. He was operating solely within his community caretaker role to determine if the woman needed assistance. Under the circumstances, we believe that Officer Holt provided specific and articulable facts supporting his decision to stop Short Bull's vehicle. Therefore, the circuit court correctly affirmed the magistrate judge's denial of Short Bull's motion to suppress.

[¶21.]     As indicated above, the magistrate judge's decision relied not only upon the community caretaker exception to the warrant requirement, but also upon a determination that Officer Holt possessed reasonable suspicion of criminal activity and was acting under exigent circumstances, apparently offering all as alternative conclusions. For its part, the circuit court affirmed the magistrate judge on the basis that Officer Holt "had a reasonable articulable suspicion to stop that vehicle and determine if a lady was present or not or there was something going on that required law enforcement intervention." We interpret this rationale, at least in part, to rest correctly upon the conclusion that it was reasonable for Officer Holt to

determine if a woman was inside of the SUV and whether she had been the victim of a domestic assault and in need of assistance.

[¶22.]     Despite the prominence of the community caretaker exception, Short Bull limits his appellate argument solely to a challenge to the magistrate judge's determination that Officer Holt had sufficient reasonable suspicion of criminal activity. He does not include any argument or discussion relating to the community caretaker exception in his principal brief. The State argued in its responsive brief, as it had in the magistrate and circuit courts, that Officer Holt was acting in his community caretaking role, but Short Bull did not submit a reply brief. Therefore, even if Short Bull were correct in his contention that Officer Holt lacked reasonable suspicion of criminal activity, he does not further argue that the magistrate judge erred by concluding the stop was justified under the community caretaker exception. In our view, this judicial determination was correct and disposes of the issue presented in this appeal, making it unnecessary to consider the alternate bases on which the magistrate judge relied to deny Short Bull's motion to suppress.

[¶23.]     We affirm.

[¶24.]     GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and WILBUR, Retired Justice, concur.