#28941-r-JMK
**2020 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,     Plaintiff and Appellant,

  v.

MAKAYLA MOUSSEAUX,     Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MATTHEW M. BROWN
Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

ARMAN ZELJKOVIC
Pennington County Deputy
 State's Attorney
Rapid City, South Dakota     Attorneys for plaintiff and
             appellant.


JEFFREY J. FRANSEN of
Pennington County Public
 Defender's Office
Rapid City, South Dakota     Attorneys for defendant and
             appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 4, 2019
OPINION FILED **06/17/20**

#28941

KERN, Justice

[¶1.]      Makayla Mousseaux was charged with possession of methamphetamine in violation of SDCL 22-42-5 and false impersonation in violation of SDCL 22-40-1.  She moved to suppress the evidence, arguing that she was unconstitutionally detained because the police lacked reasonable suspicion to stop her.  The circuit court granted her motion and issued an order suppressing the evidence.  The State successfully petitioned this Court for an intermediate appeal.  We reverse.

**Facts and Procedural History**

[¶2.]      For purposes of this appeal, the following facts are undisputed.  In the early morning of May 22, 2017, Rapid City Police Officer Bethany Coats and her training officer, Garrett Loen, were on duty when they received a report from dispatch directing units to 45 Neptune Drive to respond to a possible fight in progress.  The dispatch was based on an unidentified 911 caller who reported seeing people at this address, likely in a vehicle, involved in the altercation.

[¶3.]      Officers Coats and Loen immediately responded to the scene, arriving in less than five minutes from receipt of the report.  Upon arrival, they looked around for signs of a disturbance.  Officer Coats observed two women standing next to a vehicle at the address provided by the reporting party.  The individuals were not fighting, nor did they appear distressed or injured.

[¶4.]      Officer Coats exited her patrol car to investigate further.  When she approached the suspects to visit with them, one of the women, later identified as Makayla Mousseaux (Mousseaux), stated that she wanted to put her black duffle

bag inside her trailer, which was located directly next to the vehicle. Officer Coats directed Mousseaux to wait outside the trailer while they investigated the reported fight. Mousseaux ignored the instruction and began walking toward the trailer with the bag in hand.

[¶5.] Officer Coats, with the help of Officer Loen, attempted to prevent Mousseaux from entering the trailer by blocking the door. When Mousseaux started to enter the trailer anyway, Officer Coats grabbed her by the arm. After holding Mousseaux back, Officer Coats requested that she provide her name. Mousseaux identified herself as Lucille Mousseaux and when asked for her date of birth, stated that it was September 18, 1981.

[¶6.] The officers requested that dispatch run a records check. When no records were found under that name, Officer Coats put Mousseaux in handcuffs because she believed that Mousseaux had falsely identified herself. Shortly thereafter, another officer identified that Mousseaux's first name was actually Makayla, rather than Lucille, by using a search based on name similarities and a prior booking photo of Mousseaux on file. When dispatch ran the name "Makayla Mousseaux" through the database, they discovered that she had an outstanding, unrelated traffic warrant. Accordingly, Officer Coats placed Mousseaux under arrest.

[¶7.] During the search incident to her arrest, officers found small jeweler's bags and a scale inside Mousseaux's black bag. Residue on the scale tested presumptively positive for methamphetamine. Mousseaux was charged with

possession of a controlled substance under SDCL 22-42-5 and impersonation with intent to deceive law enforcement in violation of SDCL 22-40-1.

[¶8.] Prior to trial, Mousseaux moved to suppress the evidence obtained as a result of her interaction with police on the grounds that the officers lacked reasonable suspicion to detain her. The State, in its responsive brief, refuted Mousseaux's claim, arguing the stop was constitutional. Alternatively, it argued that even if the stop was improper, the discovery of a valid arrest warrant precluded suppression of the evidence pursuant to the "attenuation doctrine," an exception to the exclusionary rule under the Fourth Amendment.

[¶9.] The circuit court held an evidentiary hearing and granted the motion to suppress the evidence seized, concluding that Officer Coats lacked reasonable suspicion to detain Mousseaux. Despite the State's alternative argument and motion for reconsideration asking the court to address this issue, the circuit court did not analyze the applicability of the attenuation doctrine in either its oral holdings or in its findings of fact and conclusions of law. Although the State raises two issues for our review, we resolve this appeal solely upon the application of the attenuation doctrine.

### Standard of Review

[¶10.] Our standard of review for suppression motions is well established. *State v. Haar*, 2009 S.D. 79, ¶ 12, 772 N.W.2d 157, 162. When examining a circuit court's ruling on a motion to suppress based on an alleged constitutional violation, we review de novo the circuit's decision to grant or deny the motion. *Id*. We review a circuit court's findings of fact under the clearly erroneous standard, giving "no

deference to its conclusions of law [when] apply[ing] the de novo standard." *State v. Condon*, 2007 S.D. 124, ¶ 15, 752 N.W.2d 861, 866.

**Analysis and Decision**

[¶11.] Although the circuit court concluded that Officer Coats's initial contact with Mousseaux did not amount to a Fourth Amendment seizure, it held that the situation "unquestionably ripened into an investigative detention the moment [Officers] Coats and Loen prevented Mousseaux from entering her home." The circuit court found that Officer Coats failed to articulate "any particularized and objective basis for suspecting Mousseaux of criminal activity" at that point in time and therefore, lacked reasonable suspicion to detain her. On this basis, the court suppressed the evidence seized. Even if we assume, without deciding, that the stop was unconstitutional, the existence of a valid arrest warrant requires consideration of whether the attenuation doctrine precludes suppression of the evidence seized in this case.

[¶12.] "The Fourth Amendment protects a person from 'unreasonable searches and seizures.'" *State v. Stanage*, 2017 S.D. 12, ¶ 7, 893 N.W.2d 522, 525 (quoting U.S. Const. amend. IV). It "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578, 45 L. Ed. 2d 607 (1975). The remedy for unconstitutional searches and seizures is the suppression of evidence. *Utah v. Strieff*, __ U.S. __, __, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016). This concept has been coined as the exclusionary rule. *State v. Fierro*, 2014 S.D. 62, ¶ 25, 853 N.W.2d 235, 244.

#28941

[¶13.] But "[s]uppression of evidence . . . has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56 (2006). Therefore, even in cases where a stop violates the Fourth Amendment, evidence is sometimes admissible if an exception applies. The primary reason we acknowledge exceptions is to account for "the [exclusionary] rule's 'costly toll' upon truth-seeking and law enforcement objectives[.]" *Id.* (quoting *Pennsylvania Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 364–65, 118 S. Ct. 2014, 2020, 141 L. Ed. 2d 344 (1998)). Indeed, as the United States Supreme Court has repeatedly instructed, the costs associated with excluding evidence because an officer lacked reasonable suspicion "presents a high obstacle for those urging [its] application." *Id.* Therefore, in order "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it . . . ." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 702, 172 L. Ed. 2d 496 (2009). This requires that we assess "the causal relationship between the unconstitutional act and the discovery of evidence." *Strieff*, __ U.S. at __, 136 S. Ct. at 2061.

[¶14.] Of the legal doctrines used to assess the casual link between an officer's misconduct and the discovery of evidence, the State has placed only the attenuation doctrine at issue here.∗ The attenuation doctrine applies "when the

---

∗     The three exceptions to the exclusionary rule all focus on the causal link between an unconstitutional act and the discovery of evidence. The first is the independent source doctrine. This "allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Id.* at __, 136 S. Ct. at 2061. The second, referred to as the inevitable discovery doctrine, permits admission of evidence when its discovery is inevitable despite the unconstitutional source. *Nix v.*

(continued . . .)

connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence[.]'" *Strieff*, __ U.S. at ___, 136 S. Ct. at 2061 (quoting *Hudson*, 547 U.S. at 593, 126 S. Ct. at 2164). Because our case law with respect to attenuation is undeveloped, we look first to the United States Supreme Court's recent decision in *Utah v. Strieff*, a case which bears similarities to the one before us. *Id.*

[¶15.] In that case, an anonymous tip led a narcotics detective to conduct intermittent surveillance outside a particular residence. *Id.* at ___, 136 S. Ct. at 2059. After watching the house for almost a week, the detective noticed an unusually high amount of foot traffic coming and going from the residence, leading him to suspect its inhabitants were drug dealers. *Id.* at ___, 136 S. Ct. at 2060.

[¶16.] At one point during the surveillance, the detective watched Edward Strieff leave the house and walk over to a convenience store nearby. He followed Strieff and detained him so that he could learn why he was in the residence. *Id.* Strieff produced a Utah identification card. Dispatch ran Strieff's name, uncovering a valid, preexisting arrest warrant for a traffic violation. *Id.* The detective placed Strieff under arrest and during the search that followed, found a baggie of methamphetamine in Strieff's possession. The State charged Strieff with

_____

(. . . continued)
> *Williams*, 467 U.S. 431, 443–444, 104 S. Ct. 2501, 2508-09, 81 L. Ed. 2d 377 (1984). The last, the attenuation doctrine, is the legal concept addressed in this appeal.

possession of methamphetamine and drug paraphernalia, and Strieff challenged the constitutionality of the stop. *Id.* At a subsequent hearing, the State conceded that the detective did not have reasonable suspicion to stop Strieff, instead arguing the existence of the warrant saved the evidence from suppression. *Id.* The trial court ruled in favor of the State. *Id.* Strieff appealed, and the Utah Supreme Court reversed. *Id.* The case proceeded to the United States Supreme Court. *Id.*

[¶17.] In resolving the parties' competing views of the exclusionary rule, the Court held that when an officer's initial stop is the product of a good faith error, the defendant's preexisting arrest warrant is "sufficiently attenuated" from the unlawful stop, saving the evidence from exclusion. *Id.* at __, 136 S. Ct. at 2062. As the Supreme Court explained, determining whether the attenuation doctrine applies requires weighing three factors:

> First, we look to the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider the presence of intervening circumstances. Third, and particularly significant, we examine the purpose and flagrancy of the official misconduct.

*Id.* at __, 136 S. Ct. at 2062 (citations and internal quotations omitted). Because no single factor controls, we discuss each factor in turn. *See Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S. Ct. 2254, 2261–62, 45 L. Ed. 2d 416 (1975).

        *i.*     *Temporal proximity*

[¶18.] Historically, the Supreme Court, in reviewing temporal proximity, has declined to find "attenuation unless substantial time elapses between an unlawful act and when the evidence is obtained." *Strieff*, __ U.S. at __, 136 S. Ct. at 2062. In *Strieff*, mere minutes passed between Strieff's detention and the search incident to

his arrest, leading the Court to conclude that the "short time interval counsel[ed] in favor of suppression." *Id.*

[¶19.]     Here, the State concedes that a short time transpired between Mousseaux's detention and the evidence the police discovered during the search of her bag. We see no meaningful distinction between the time that elapsed in *Strieff* and the interval in Mousseaux's case. As in *Strieff*, only a few minutes separated Mousseaux's detention and the discovery of the illegal drugs. Therefore, we conclude that the first factor weighs in favor of suppression.

           ii.     *Intervening circumstances*

[¶20.]     Regarding the second factor, the presence of intervening circumstances, the State argues that the discovery of Mousseaux's preexisting warrant weighs against suppression. *See United States v. Simpson*, 439 F.3d 490, 495 (8th Cir. 2006). We agree.

[¶21.]     As the Supreme Court noted in *Strieff*, when an officer discovers an unrelated warrant that predates the stop, typically, the officer not only has the authority to place the suspect in custody, but has an affirmative "obligation to arrest [him or her.]" __ U.S. at ___, 136 S. Ct. at 2062. This is because, "[a] warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 920 n.21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)). The Supreme Court concluded that "once [the officer] was authorized to arrest Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect [the

officer's] safety." *Id.* at __, 136 S. Ct. at 2063. Therefore, the existence of such a warrant, "strongly favors the State." *Id.* at ___, 136 S. Ct. at 2062.

[¶22.] Mousseaux does not attempt to challenge the validity of the warrant discovered by law enforcement. Nor does she argue that our state Constitution provides additional Fourth Amendment protections beyond those provided in the federal constitution. *See State v. Kottman*, 2005 S.D. 116, ¶ 13, 707 N.W.2d 114, 120 (requiring an affirmative demonstration that the "State Constitution . . . supports a different interpretation[.]"). Therefore, we follow the guidance of the United States Supreme Court and hold that discovery of a valid, preexisting warrant is an intervening circumstance that weighs in favor of the State.

   *iii.    Flagrancy of police misconduct*

[¶23.] Despite the existence of a valid warrant, suppression may nevertheless be warranted if the police engage in "a suspicionless fishing expedition 'in the hope that something w[ill] turn up.'" *Strieff*, __ U.S. at __, 136 S. Ct. at 2064 (quoting *Taylor v. Alabama*, 457 U.S. 687, 691, 102 S. Ct. 2664, 2667, 73 L. Ed. 2d 314 (1982)). "*Strieff* did not announce a *per se* rule that the discovery of a warrant would always vitiate subsequent searches." *United States v. Lowry*, 935 F.3d 638, 644 (8th Cir. 2019). Instead, with regard to the purposefulness/flagrancy factor, we review the circumstances of the stop for evidence of flagrant police misconduct. *Id.* at 643–44. "The purpose and flagrancy of the official misconduct is 'the most important factor because it is directly tied to the purpose of the exclusionary rule-deterring police misconduct.'" *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1110 (8th Cir. 2007) (quoting *Simpson*, 439 F.3d at 496) (considering misconduct as

it related to an arrest rather than with respect to an investigatory detention, as is the case here). In assessing this factor, we consider whether: "(1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose *and executed 'in the hope that something might turn up.'"* *Simpson*, 439 F.3d at 496 (quoting *Brown*, 422 U.S. at 605, 95 S. Ct. at 2262) (emphasis added).

[¶24.] To support her argument on appeal that this factor weighs in favor of suppression, Mousseaux emphasizes the differences between her case and the factual scenario the Supreme Court considered in *Strieff*. In particular, she highlights that the detective in *Strieff* staked out the residence for nearly a week before stopping Strieff to ask him about his purpose at the house. __ U.S. at ___, 136 S. Ct. at 2059. In contrast, Officer Coats spent, at most, a few minutes assessing the surroundings before approaching Mousseaux.

[¶25.] Mousseaux, however, fails to account for the reason Officer Coats arrived at the scene. The circuit court specifically found that Officer Coats was responding to a reported fight. This is not a case in which the officers randomly patrolled a neighborhood to question and seize unsuspecting citizens. Based on our review of the record, there is nothing to suggest that Officer Coats had any improper investigatory purpose when she responded to the call from dispatch requesting that officers respond to the location of a fight in progress. As the circuit court noted in its conclusions of law, when asked about her reason for following Mousseaux to the trailer's door, Officer Coats testified, "At this point I didn't know

-10-

if she was a suspect. I didn't know if an assault had occurred. We had just arrived so I didn't have enough information to determine a crime had not occurred." This testimony supports Officer Coats's explanation that she followed Mousseaux to the trailer door to gather further information regarding a possible assault, particularly when she did not know at that time whether Mousseaux was a suspect and Mousseaux was not cooperating with her direction to wait outside the trailer.

[¶26.] Similar to the Court's conclusion in *Strieff*, we consider Officer Coats's decision to pursue Mousseaux and detain her at the trailer door as "at most negligent." __ U.S. at ___, 136 S. Ct. at 2063. "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Id.* at ___, 136 S. Ct. at 2064. Because this record lacks any evidence that Officer Coats engaged in a "suspicionless fishing expedition," this factor weighs in favor of the State. *See id.*

[¶27.] In reviewing the attenuation factors in their totality, we conclude they weigh in favor of the State. The circuit court erred when it refused to consider the application of the attenuation doctrine and suppressed evidence obtained as a result of Mousseaux's arrest. Because the connection between Mousseaux's detention and the subsequent search incident to her arrest was interrupted by the existence of a valid, preexisting warrant unrelated to this case, "the interest protected by the constitutional guarantee that has [allegedly] been violated would not be served by suppression of the evidence[.]" *Hudson*, 547 U.S. at 593, 126 S. Ct. at 2164. We reverse.

#28941

[¶28.]     GILBERTSON, Chief Justice, and JENSEN, SALTER, and

DEVANEY, Justices, concur.