#29832-a-SRJ
**2022 S.D. 76**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

v.

MALIA ANN ROSA,                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

JOHN R. MURPHY
Rapid City, South Dakota                   Attorney for defendant and
                                           appellant.


MARK VARGO
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff and
                                           appellee.

* * * *

CONSIDERED ON BRIEFS
AUGUST 30, 2022
OPINION FILED **12/14/22**

#29832

JENSEN, Chief Justice

[¶1.]     Malia Rosa was charged for driving under the influence (DUI) and open container in a motor vehicle after her daughter, A.R., called 911 and reported that Rosa may be drinking and driving and provided Rosa's location.  Relying on the tip, officers conducted a traffic stop of Rosa's van and ultimately arrested her for DUI.  Rosa filed a motion to suppress the evidence obtained during the stop, arguing the stop was an unreasonable search and seizure prohibited by the Fourth Amendment of the United States Constitution.  The circuit court denied the motion. The court found Rosa guilty of open container and DUI and imposed a suspended imposition of sentence.  Rosa appeals the circuit court's denial of her motion to suppress, arguing that the officers did not have reasonable suspicion to stop her. We affirm.

## Facts and Procedural History

[¶2.]     On August 25, 2020, at roughly 7:06 p.m., Officer Jacob Westover received a call from dispatch reporting a "possible drunk driver in the Dollar Tree parking lot" in Spearfish, South Dakota.  Dispatch informed Officer Westover that the reporting party, A.R., had called from Custer, South Dakota.  A.R. identified herself by name and provided dispatch with her phone number, address, and birthdate, indicating she was 14 years old at the time.  After the stop, law enforcement discovered that the provided address was a juvenile facility.

[¶3.]     A.R. reported that she had spoken to her mother, Malia Rosa, on the phone and that Rosa had "sounded drunk but I couldn't tell."  A.R. did not report how long ago she had spoken to Rosa.  A.R. stated that Rosa had left home at 5 a.m.

-1-

and had a history of disappearing and drinking. A.R. explained that Rosa had been at Dollar Tree and that she was planning to leave the area soon. Rosa was reportedly driving a white van with a design on the side. Officer Westover believed A.R.'s tip was reliable, as he assumed "she has firsthand knowledge due to it being her mother."

[¶4.]        At approximately 7:18 p.m., Sergeant Steven Hofmann arrived at Dollar Tree to investigate the report. Sergeant Hofmann believed A.R.'s tip was sufficient to effect a stop and decided against personally calling A.R. for more information. Additionally, he concluded that A.R.'s statement that Rosa would be leaving Dollar Tree soon indicated that they had spoken recently.

[¶5.]        Once Sergeant Hofmann arrived at Dollar Tree, he observed the white van A.R. had described. He ran the plates and confirmed that the vehicle was registered to an individual from Custer County. Seeing no occupants in the van, he left the parking lot and watched the van from a distance. Roughly ten minutes later, a woman, later identified as Rosa, walked out of Dollar Tree to the van. Sergeant Hofmann recalled that nothing in the way Rosa behaved indicated that she was intoxicated and that she walked normally to the van and drove the vehicle out of the parking lot. Sergeant Hofmann communicated with Officer Westover and instructed him to stop the van.

[¶6.]        Officer Westover arrived as the van was leaving the Dollar Tree parking lot, and both officers followed it to Walmart. Neither officer observed Rosa drive erratically or commit a traffic violation. After Rosa had pulled into a parking space, the officers parked their cars behind her—blocking her in, as another car was

parked in front of hers. Officer Westover testified that by the time he and Sergeant Hofmann pulled in behind Rosa, they would not have allowed her to leave.

[¶7.] The officers exited their patrol vehicles and approached Rosa's van. Upon reaching Rosa, Officer Westover informed her that he had received a "complaint" and asked to see her driver's license, which he used to identify her as Malia Rosa. Officer Westover reported an "odor of an alcoholic beverage coming from inside the vehicle." He asked Rosa to exit the van. The officers had Rosa perform field sobriety tests and, based upon their observations, arrested Rosa for DUI and open container.

[¶8.] The State filed an indictment on September 30, 2020, charging Rosa with one count of DUI in violation of SDCL 32-23-1(1), and an alternative count of DUI in violation of SDCL 32-23-1(2). The State also filed a part II information, alleging that Rosa had two prior convictions for DUI. On February 9, 2021, Rosa moved to suppress the evidence obtained during the stop, arguing that law enforcement's stop of her vehicle violated her right against unreasonable search and seizure under the Fourth Amendment of the United States Constitution. At a suppression hearing, the court heard testimony from Officer Westover and Sergeant Hofmann, detailing the information they had received prior to the stop and their interactions with Rosa during the stop.

[¶9.] The court entered an order denying Rosa's motion to suppress. The court found A.R.'s tip, coupled with rational inferences and common sense, was sufficient to give the officers reasonable suspicion to stop Rosa. The court

determined A.R.'s tip was reliable because of her familial relationship with Rosa and her willingness to identify herself.

[¶10.]        The parties submitted stipulated facts at a bench trial on September 9, 2021.  The court found Rosa guilty of DUI in violation of SDCL 32-23-1(1) and open container.  The court dismissed the alternative count for DUI.  Rosa admitted to the part II information.  On October 12, 2021, the court suspended the imposition of sentence and placed Rosa on probation for two years with conditions that included serving five days in county jail.

[¶11.]        Rosa appeals the denial of the motion to suppress, arguing that (1) she was seized within the meaning of the Fourth Amendment, (2) the officers did not have probable cause to seize her, and (3) the officers lacked reasonable suspicion to seize her.[1]

## Standard of Review

[¶12.]        "Our standard of review for suppression motions is well established." *State v. Mousseaux*, 2020 S.D. 35, ¶ 10, 945 N.W.2d 548, 551.  "We review the denial of a motion to suppress based on the alleged violation of a constitutionally protected right as a question of law by applying the de novo standard of review." *State v. Rolfe*, 2018 S.D. 86, ¶ 10, 921 N.W.2d 706, 709 (quoting *State v. Bowers*, 2018 S.D. 50, ¶ 9, 915 N.W.2d 161, 164).  "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *State v.*

---

1.    The State does not dispute that Rosa was seized or that the State lacked probable cause.  Thus, the sole issue for review is whether law enforcement had reasonable suspicion to stop Rosa's vehicle.

*Wilson*, 2004 S.D. 33, ¶ 8, 678 N.W.2d 176, 180 (alteration in original) (quoting *State v. Hirning*, 1999 S.D. 53, ¶ 9, 592 N.W.2d 600, 603).

[¶13.] "We review the circuit court's factual findings for clear error. Once the facts have been determined, we give no deference to the court's application of a legal standard to those facts. Those questions of law are reviewed de novo." *State v. Kleven*, 2016 S.D. 80, ¶ 7, 887 N.W.2d 740, 742 (internal citation omitted).

**Analysis and Decision**

[¶14.] The Fourth Amendment protects a person from "unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[T]he Fourth Amendment's textual reference to the issuance of '[w]arrants' has been interpreted to state a general principle that police officers 'must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure[.]'" *State v. Grassrope*, 2022 S.D. 10, ¶ 8, 970 N.W.2d 558, 561 (alterations in original) (quoting *State v. Schumacher*, 2021 S.D. 16, ¶ 20, 956 N.W.2d 427, 432). As such, generally, "[a] warrantless search and seizure is *per se* unreasonable[.]" *State v. Zahn*, 2012 S.D. 19, ¶ 29, 812 N.W.2d 490, 499 (citation omitted).

[¶15.] However, the warrant requirement is not absolute. *Grassrope*, 2022 S.D. 10, ¶ 8, 970 N.W.2d at 561. "[T]he Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *State v. Stanage*, 2017 S.D. 12, ¶ 7, 893 N.W.2d 522, 525 (quoting *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014)). "[A] warrant is not required to effect a temporary seizure of a vehicle by means of a

traffic stop," so long as an officer has a reasonable suspicion to stop the vehicle. *State v. Short Bull*, 2019 S.D. 28, ¶ 12, 928 N.W.2d 473, 476.

[¶16.] Reasonable suspicion to effectuate a stop must be "based upon 'specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Akuba*, 2004 S.D. 94, ¶ 15, 686 N.W.2d 406, 413 (alteration in original) (quoting *State v. Chavez*, 2013 S.D. 93, ¶ 16, 668 N.W.2d 89, 95). Officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *State v. Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d 551, 554 (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750–51, 151 L. Ed. 2d 740 (2002)). "To determine whether there existed a particularized and objective basis for believing that criminal activity is afoot, [this Court] review[s] the totality of the circumstances at the time the stop was effectuated." *State v. Tenold*, 2019 S.D. 66, ¶ 19, 937 N.W.2d 6, 12.

[¶17.] We have consistently interpreted reasonable suspicion to be "a common-sense and non-technical concept dealing with the practical considerations of everyday life." *Herren*, 2010 S.D. 101, ¶ 8, 792 N.W.2d at 554 (quoting *State v. Quartier*, 2008 S.D. 62, ¶ 10, 753 N.W.2d 885, 888). This Court determines reasonable suspicion on an objective standard. *Id.* "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *State v. Olson*, 2016 S.D.

25, ¶ 5, 877 N.W.2d 593, 595 (quoting *Herren,* 2010 S.D. 101, ¶ 7, 792 N.W.2d at 554).

[¶18.] "Investigatory stops may be based on information provided by informants. However, '[t]he requirement that an officer have reasonable suspicion prior to a stop is not abrogated simply because a third-party informant is convinced a crime occurred.'" *State v. Sharpfish*, 2019 S.D. 49, ¶ 26, 933 N.W.2d 1, 10 (alteration in original) (quoting *Stanage*, 2017 S.D. 12, ¶ 10, 893 N.W.2d at 526). "'The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability[]"' based upon the totality of the circumstances." *Id.* ¶ 25, 933 N.W.2d at 10 (quoting *Navarette*, 572 U.S. at 397, 134 S. Ct. at 1687).

[¶19.] "The stop may be legal if the tip contains more than conclusory allegations and offers specific and detailed allegations of criminal conduct, even if the officer does not corroborate the criminal conduct before the seizure." *Id.* ¶ 26, 933 N.W.2d at 10. However, when a tip lacks the requisite specificity and detail regarding the alleged wrongdoing, "the officer must have some other reason to believe the informant's conclusion is correct."[2] *Stanage*, 2017 S.D. 12, ¶ 11, 893 N.W.2d at 526.

---

2. The dissent relies on *Stanage* and highlights the observations of possible intoxication that an employee made of a driver at a fast food window. Significantly, however, the employee's observations were not reported to law enforcement, and the *Stanage* Court noted that "this information was not known to law enforcement at the time of the stop." 2017 S.D. 12, ¶ 8, 893 N.W.2d at 525. The report to law enforcement in *Stanage* was a mere statement that there was "a drunk driver at [the] window" by an informant who had no known prior experiences with observing the effect of alcohol on

(continued . . .)

[¶20.] "An informant 'whose identity is known, who personally observes the alleged criminal activity, and who openly risks liability by accusing another person of criminal activity [ ] may not need further law enforcement corroboration.'" *State v. Ostby*, 2020 S.D. 61, ¶ 17, 951 N.W.2d 294, 299 (alteration in original) (quoting *State v. Dubois*, 2008 S.D. 15, ¶ 15, 746 N.W.2d 197, 203). "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite *quantum of suspicion* than would be required if the tip were more reliable." *Herren*, 2010 S.D. 101, ¶ 17, 792 N.W.2d at 556 (alteration in original) (quoting *State v. Scholl*, 2004 S.D. 85, ¶ 9, 684 N.W.2d 83, 86). Specifically, "when an *unknown* informant does not give 'explicit and detailed description of alleged wrongdoing,' . . . '[t]he officer must confirm the tip through personal observations of criminal activity, or in the alternative, be aware that the tipster 'has special training or experience relating to the conclusion at issue.'" *Ostby*, 2020 S.D. 61, ¶ 18, 951 N.W.2d at 300 (alteration in original) (quoting *Sharpfish*, 2019 S.D. 49, ¶ 27, 933 N.W.2d at 10).

[¶21.] Rosa asserts that the officers did not have reasonable suspicion to effectuate the stop because the content and reliability of A.R.'s tip did not provide the officers with a particularized and objective basis to believe that Rosa was intoxicated.[3] Rosa argues that because A.R.'s tip failed to give a detailed

---

(. . . continued)
the suspect. *Id.* ¶ 29, 893 N.W.2d at 533 (alternation in original) (Kern, J., dissenting).

3. Rosa also argues that the circuit court "misunderstood the facts of the case" and that the court erroneously found that A.R. "informed dispatch that her mother has prior DUIs and a tendency to disappear and drink." Rosa's assertion is correct insofar as that the record does not show that A.R. relayed

(continued . . .)

description of Rosa's alleged misconduct, the officers needed additional facts to support reasonable suspicion. The State responds that the officers had a particularized and objective basis for suspecting criminal activity based on A.R.'s tip and their personal observations that corroborated the tip.

[¶22.] Officer Westover and Sergeant Hofmann were told by dispatch that A.R. had identified Rosa as her mother, had explained that she "sounded intoxicated" on the phone, and had noted that Rosa was at Dollar Tree. Although A.R. expressed some uncertainty about her mother's condition, A.R. added that Rosa had a history of disappearing for hours, as she had that day, and returning after consuming alcohol. Risking liability for making a false report, A.R. also cast aside anonymity and provided dispatch with specific, personal information.

[¶23.] A.R. also provided dispatch with the description of the van Rosa was driving and stated that it would be located in the Dollar Tree parking lot. The officers identified the van in the parking lot roughly 20 minutes after the call. *See Stanage*, 2017 S.D. 12, ¶ 12, 893 N.W.2d at 527 (noting that the reliability of a tip hinges predominantly on the assertion of illegality but that "[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense" (citation omitted)). Additionally, A.R. reported that her mother may be leaving the Dollar Tree soon. Shortly thereafter, both officers

---

(. . . continued)
that Rosa had prior DUIs. To the extent the circuit court's finding that A.R. reported Rosa had prior DUIs was erroneous, the court's remaining findings nonetheless support a conclusion that the officers had reasonable suspicion. Rosa also argues the circuit court erred in finding "that A.R. told dispatch that Rosa 'had been at the Dollar Tree for about four hours, and that she may be leaving the area soon.'" However, this finding is supported by the record.

observed Rosa leave the store, get into her vehicle, and drive away. This discovery confirmed for the officers that A.R. had spoken with Rosa and supported a reasonable inference that the observations about her condition were made near the time that A.R. called law enforcement.

[¶24.] "By accurately predicting future behavior, [a] tipster demonstrated 'a special familiarity with respondent's affairs,' which in turn implied that the tipster had 'access to reliable information about that individual's illegal activities.'" *Navarette*, 572 U.S. at 398, 134 S. Ct. at 1688 (quoting *Alabama v. White*, 496 U.S. 325, 332, 110 S. Ct. 2412, 2417, 110 L. Ed. 2d 301 (1990)). In *White*, an anonymous tipster had called police and informed them that a woman would leave a particular apartment building and drive to a hotel in a brown station wagon. 496 U.S. at 327, 110 S. Ct. at 2414. The tipster stated that the woman would be delivering cocaine and described the time frame in which the delivery would take place. *Id.*, 496 U.S. at 331, 110 S. Ct. at 2417. The officers went to the apartment building and watched the woman get into the described vehicle and drive in the direction of the hotel. *Id.* The Court noted that anyone could have predicted that the vehicle could be found at the apartment. *Id.*, 496 U.S. at 332, 110 S. Ct. at 2417. However, "[w]hat was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information[.]" *Id.* Thus, the Court held that "[b]ecause only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.*

[¶25.] Rosa asserts that the fact that A.R. was an identifiable informant and related to Rosa does not end the reliability inquiry, arguing that the mother/daughter relationship between Rosa and A.R. complicates the determination of reliability because there could be ulterior motives underlying A.R.'s report. Although not addressed by this Court, courts in other jurisdictions that have considered tips from personally involved individuals, such as friends and family, have generally found such tips to be more reliable because such people have greater opportunity to observe a suspect's criminal behavior and have less of an incentive to report. *See State v. Van Ruiten*, 760 P.2d 1302, 1305 (N.M. Ct. App. 1988) ("[T]he familial relationship of the [informant] no doubt lent credibility[.]"); *State v. Deluna*, 40 P.3d 1136, 1142 (Utah Ct. App. 2001) (finding a tip reliable because the informant relayed personal observations and risked implicating a family member); *State v. Nelson*, 691 N.W.2d 218, 227 (N.D. 2005) (stating that other courts have presumed reliability when an informant is a spouse living at the residence to be searched). *But see State v. Lindquist*, 205 N.W.2d 333, 335 (Minn. 1973) (stating that a "prior relationship with a suspect might give an informer motive to lie or exaggerate").

[¶26.] Here, we conclude the officers reasonably relied upon the information A.R. provided, as it suggested A.R. had a genuine concern for her mother. There was nothing to indicate that A.R. had any other motive for reporting to law enforcement. Moreover, the officers did not merely rely on A.R. and Rosa's familial relationship to form reasonable suspicion to conduct the stop. The officers also

corroborated A.R.'s tip with their personal observations of the vehicle at Dollar Tree and Rosa leaving within minutes after their arrival.

[¶27.] Nonetheless, Rosa also argues that A.R.'s tip did not contain sufficient specific factual allegations to support the officers' inference that Rosa was intoxicated and was not based on A.R.'s personal observations of Rosa's actions. Rosa cites *Scholl*, in which this Court noted the importance of a "tipster provid[ing] the basis of his information and suspicion, *i.e.*, personal observation of the driver stumbling badly from a bar and having trouble getting into his vehicle." 2004 S.D. 85, ¶ 17, 684 N.W.2d at 89. In *Scholl*, an unknown, but identifiable, tipster reported the possibility of an intoxicated driver and informed law enforcement that he had seen the driver stumbling as he left the bar and got into his pickup. *Id.* ¶ 2, 684 N.W.2d at 84. The tipster described the vehicle and recited the Nebraska license plate number. *Id.* ¶ 12, 684 N.W.2d at 87–88. The *Scholl* tipster did not mention specific moving violations—he simply relayed behavioral indications common among intoxicated individuals. *Id.* ¶ 13, 684 N.W.2d at 88. This Court held that the tipster's description of the vehicle coupled with the fact that the suspect was leaving a bar was sufficient to establish reasonable suspicion. *Id.* ¶ 14, 684 N.W.2d at 88.

[¶28.] Contrary to Rosa's argument, *Scholl* supports the conclusion that A.R. provided sufficient facts to create a reasonable belief that Rosa may be intoxicated. Much like the tipster in *Scholl*, A.R. explained that her basis for believing her mother was driving under the influence flowed from the way Rosa had sounded over the phone. Further, A.R. described Rosa's history of leaving in her vehicle and

"disappearing and drinking." Given the history described by A.R., an officer could reasonably infer that A.R. had previously observed the effect of alcohol on Rosa and that the vocal indicators of her mother's drunkenness were as obvious to A.R. as stumbling out of a bar may be to an ordinary person. *See Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d at 554 (permitting officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them" (citation omitted)); *Scholl*, 2004 S.D. 85, ¶ 14, 684 N.W.2d at 88 ("[C]ommon sense must illumine [this Court's] review of whether [an] officer had [the] requisite suspicion to justify [the] vehicle stop[.]" (citing *State v. Roberts*, 977 P.2d 974 (Mont. 1999))).

[¶29.] Based upon the totality of the circumstances, the circuit court properly concluded that law enforcement had reasonable suspicion to believe that Rosa was driving under the influence of alcohol at the time of the stop. The circuit court did not err in denying Rosa's motion to suppress.

[¶30.] We affirm the circuit court's denial of the motion to suppress.

[¶31.] KERN, SALTER, and DEVANEY, Justices, concur.

[¶32.] MYREN, Justice, dissents.

MYREN, Justice (dissenting).

[¶33.] I respectfully dissent. Law enforcement did not have reasonable suspicion of criminal activity to justify the stop of Rosa.

[¶34.] Both officers testified that they stopped Rosa solely based on A.R.'s report that her mother sounded intoxicated over the phone and had a history of drinking and disappearing. Neither officer testified that they saw any erratic

driving, traffic violations, or indication of intoxication. "Even a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'" *Navarette*, 572 U.S. at 401, 134 S. Ct. at 1690 (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)).

[¶35.] A.R. told dispatch that during the phone call, her mother "sounded drunk but I couldn't tell." She did not specify when the phone call had occurred. A.R. said that Rosa had a history of drinking and disappearing. Additionally, she said that Rosa had been at Dollar Tree for several hours and had a white van. She did not claim any knowledge that Rosa had been driving while intoxicated. None of these statements describe Rosa engaging in any criminal activity. "When an officer is not given an 'explicit and detailed description of alleged wrongdoing,' the officer must have some other reason to believe the informant's conclusion is correct." *Stanage*, 2017 S.D. 12, ¶ 11, 893 N.W.2d at 526 (citation omitted) (quoting *Navarette*, 572 U.S. at 399, 134 S. Ct. at 1689).

[¶36.] The officers found Rosa at Dollar Tree and saw her enter and operate her white van. They did not see anything that indicated intoxication. In *Stanage*, an employee at a Hardee's drive-up window noticed that a driver's eyes were bloodshot, his speech was slurred, and he had difficulty grasping the beverage he had ordered. *Id.* ¶ 2, 893 N.W.2d at 524. Based on the employee's observations, the manager contacted the police and reported a potentially drunk driver. *Id.* The restaurant manager informed dispatch that the car was at the drive-up window and provided the vehicle's license plate number. *Id.* After the suspected drunk driver drove off, law enforcement initiated a traffic stop. *Id.* ¶ 3, 893 N.W.2d at 524. The

officer "did not independently observe any suspicious behavior—the stop was predicated entirely on the information provided by the dispatcher." *Id.* As here, the State argued that "it was reasonable to ratify the informants' conclusion because [law enforcement] confirmed the identifying detail provided by the informants—i.e., the license-plate number." *Id.* ¶ 12, 893 N.W.2d at 527. In rejecting that argument, this Court noted:

> [T]he United States Supreme Court has specifically rejected the notion that identifying details like this can corroborate an allegation of criminal activity.
>
> "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. *Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity.* The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."

*Id.* (quoting *Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254 (2000)). In *Stanage*, this Court held that law enforcement did not have reasonable suspicion of criminal activity to justify the stop because they had no corroboration of the alleged intoxication, even though they could corroborate the vehicle's location based on the identifying information from an identified reporting party. "Under *Navarette*, a conclusory allegation of drunk or reckless driving is insufficient to support a reasonable suspicion of criminal activity." *Id.* ¶ 19, 893 N.W.2d at 530–31.

[¶37.]     A.R.'s report to dispatch was a conclusory allegation of intoxication. Officer Westover testified that he did not know whether A.R. had ever observed Rosa while intoxicated or whether A.R. had any other specialized training or

experience to identify signs of intoxication of any person, including Rosa. Although they had the opportunity, the officers deliberately chose not to contact A.R. to confirm the basis or motivation for her report. Nevertheless, based on the mother/daughter relationship, the majority concludes that law enforcement could reasonably infer that A.R. had previously observed her mother intoxicated and could reliably identify the state of her mother's intoxication during a telephone call. Moreover, based on the mother/daughter relationship, the majority assumes a good-faith motivation for her report. I respectfully disagree because neither the inference nor the assumption is reasonable based on the information known to the officers. These officers did not have reasonable suspicion of criminal activity as required by the Fourth Amendment to the U.S. Constitution and Article VI, § 11 of the South Dakota Constitution.