#30448-a-SRJ
**2024 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

WANDA L. EDWARDS,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN FITZGERALD
Judge

* * * *

CONOR DUFFY of
Duffy Law Firm
Rapid City, South Dakota          Attorneys for defendant and
                                  appellant.


MARTY J. JACKLEY
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota              Attorneys for plaintiff and
                                  appellee.

* * * *

CONSIDERED ON BRIEFS
APRIL 23, 2024
OPINION FILED **10/16/24**

#30448

JENSEN, Chief Justice

[¶1.]	A Sturgis police officer initiated a traffic stop after observing a vehicle being driven without an illuminated headlamp. The driver was arrested after law enforcement found methamphetamine and drug paraphernalia on his person. Wanda Edwards, a passenger, was then asked to step out of the vehicle so they could conduct a search of the vehicle and its contents. Edwards refused to turn over her purse that was with her inside the vehicle. Law enforcement forcibly took Edwards' purse, searched it, and found a small amount of methamphetamine and drug paraphernalia. Edwards moved to suppress the contraband found in her purse. Edwards' motion was denied, and she was found guilty of possession of a controlled substance, possession of marijuana, and obstructing a law enforcement officer. Edwards appeals the denial of her suppression motion. We affirm.

**Factual and Procedural Background**

[¶2.]	On November 4, 2022, Sergeant Jameson Tebben of the Sturgis Police Department was on patrol in Sturgis. At approximately 7:46 p.m., Sergeant Tebben observed a sedan traveling eastbound on Lazelle Street with a headlamp that was not illuminated and initiated a traffic stop.

[¶3.]	The driver of the vehicle informed Sergeant Tebben that he did not have his driver's license with him. The front seat passenger was able to provide her driver's license and identified herself as Wanda Edwards. Edwards indicated that she was the owner of the vehicle and provided Sergeant Tebben with her vehicle registration. She was unable to provide proof of insurance.

-1-

[¶4.] Sergeant Tebben brought the driver to his patrol vehicle for further questioning. The driver identified himself as Alexander Pearman but was unable to provide his address or social security number. During their conversation, Sergeant Tebben detected the odor of alcohol on the driver and performed a field sobriety test. After conducting the field sobriety test, Sergeant Tebben placed the driver inside of his patrol vehicle and returned to Edwards who was still sitting inside her vehicle. He asked Edwards what the driver's name was, and she informed him that the driver's name was "Marcus G." The driver, however, continued to state that his name was Alexander.

[¶5.] Because Sergeant Tebben was unable to confirm the driver's identity, he asked the driver to step out of the patrol vehicle and placed him in handcuffs. As the driver was placing his hands behind his back, he plunged his left hand into his front left pocket, which prompted Sergeant Tebben to conduct a pat down search of the driver. Sergeant Tebben discovered an orange hypodermic needle cap, two hypodermic needles, and a jewelry bag with a white crystal-like residue on the driver's person. The needles and jewelry bag contained substances that presumptively tested positive for methamphetamine. As a result, the driver was placed under arrest for false impersonation, possession of a controlled substance, and drug paraphernalia.

[¶6.] By this time, Meade County Deputy Sheriff Nicolis Forbes and Sturgis Police Officer Richard St. Peter arrived on the scene to assist. Sergeant Tebben informed the officers that Edwards was still inside the vehicle and asked the officers to perform a preliminary breath test (PBT) on Edwards to determine if she

was able to drive home. He also asked the officers to conduct a search of Edwards' vehicle.

[¶7.] Deputy Forbes approached Edwards and asked her to step out of the vehicle. At this time, Edwards was still seated in the passenger seat with her purse on her lap. As Edwards exited the vehicle, she took her purse from her lap and placed it over her shoulder. Officer St. Peter instructed Edwards to turn her purse over to Deputy Forbes. Edwards declined and stated, "I'm going to hold onto my purse." Deputy Forbes informed Edwards that he was "going to take [the purse] and search it." Edwards responded that Deputy Forbes needed a warrant to search the purse.

[¶8.] Officer St. Peter attempted to take the purse from Edwards, but she resisted. Edwards repeatedly claimed that the officers needed a warrant to search her purse and requested to speak with Sergeant Tebben. Sergeant Tebben confirmed that they were going to search the vehicle and Edwards' purse. Edwards continued to hold onto her purse despite being placed under arrest. Deputy Forbes was eventually able to forcibly remove the purse from Edwards and placed her into a patrol vehicle.

[¶9.] Deputy Forbes conducted a search of Edwards' purse and found two hypodermic needles, a small mirror with a white crystalline substance on it, and a bullet-shaped keychain that contained a marijuana cigarette. The needle and powder presumptively tested positive for methamphetamine.

[¶10.] Edwards was arrested and later indicted for possession of a controlled substance; possession of marijuana, two ounces or less; obstructing a law

enforcement officer; and possession of drug paraphernalia. The State also filed a part II habitual offender information alleging that Edwards had been convicted of a prior felony.

[¶11.] Edwards moved to suppress the evidence obtained during the stop, arguing that law enforcement lacked probable cause to search her purse. At the suppression hearing, the court heard testimony from Sergeant Tebben, Deputy Forbes, and Officer St. Peter, and received recordings from the officers' body cameras.

[¶12.] The court denied Edwards' motion to suppress, reasoning that law enforcement was authorized to search the vehicle and its contents incident to the driver's arrest. Upon the arrest of the driver, the court concluded that law enforcement could search any container inside the vehicle and Edwards' attempt to remove her purse from the vehicle did not defeat the fact that it was a container inside the vehicle at the time of the arrest.

[¶13.] Prior to trial, the State dismissed the charge for possession of marijuana and the part II information. At a bench trial, Edwards was found guilty of possession of a controlled substance, obstructing a law enforcement officer, and possession of drug paraphernalia. Edwards appeals her convictions arguing that her Fourth Amendment right against unreasonable searches was violated when law enforcement conducted a warrantless search of her purse.

## Standard of Review

[¶14.] "Our standard of review for suppression motions is well established." *State v. Rosa*, 2022 S.D. 76, ¶ 12, 983 N.W.2d 562, 566 (quoting *State v. Mousseaux*, 2020 S.D. 35, ¶ 10, 945 N.W.2d 548, 551). "We review the denial of a motion to suppress based on the alleged violation of a constitutionally protected right as a question of law by applying the de novo standard of review." *Id.* (quoting *State v. Rolfe*, 2018 S.D. 86, ¶ 10, 921 N.W.2d 706, 709). "[A]s a general matter[,] determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Id.* (quoting *State v. Wilson*, 2004 S.D. 33, ¶ 8, 678 N.W.2d 176, 180). However, "[w]e review any underlying factual findings of the circuit court 'under the clearly erroneous standard.'" *State v. Red Cloud*, 2022 S.D. 17, ¶ 21, 972 N.W.2d 517, 525–26 (quoting *State v. Doap Deng Chuol*, 2014 S.D. 33, ¶ 19, 849 N.W.2d 255, 261).

## Analysis and Decision

[¶15.] Edwards concedes that law enforcement was authorized to search her vehicle after they found methamphetamine and drug paraphernalia on the driver's person. However, she cites *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948), and argues that "probable cause to search a vehicle does not extend to the person of a passenger inside that vehicle." She highlights that Officer St. Peter acknowledged that he and the responding officers did not have any probable cause to believe that Edwards was in possession of illegal contraband at the time her purse was searched. Edwards attempts to distinguish this Court's decision in *State v. Steele*, 2000 S.D. 78, 613 N.W.2d 825, and the United States Supreme

Court's decision in *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999), by asserting that her purse was intimately connected to her person because she held it on her lap or over her shoulder at all times during her encounter with law enforcement. Based on this fact, she asserts that her purse "is more analogous to a pocket attached [to her] outer clothing than a container resting elsewhere in the vehicle."[1]

[¶16.] The State argues that law enforcement was authorized to search Edwards' vehicle both as a search incident to a lawful arrest and because there was probable cause to believe that criminal activity was present inside the vehicle based upon the drug residue and paraphernalia found on the driver's person. The State relies on *Steele*, 2000 S.D. 78, ¶ 5, 613 N.W.2d at 826, which held that when an officer lawfully arrests an occupant of a vehicle, the officer may "as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including "the contents of any containers found within the passenger compartment[.]"

[¶17.] The State, citing *Houghton*, 526 U.S. at 302, 119 S. Ct. at 1301, also argues that once probable cause exists to search a motor vehicle for contraband, law enforcement is authorized to search the vehicle and its contents, including the personal belongings of the driver and passenger. From the State's perspective, allowing "a passenger to remove a container from the vehicle and claim it is part of

---

1. Edwards cites decisions from other state courts concluding that a purse physically attached to an individual is entitled to an increased expectation of privacy, much like outer clothing. *See Idaho v. Newsom*, 979 P.2d 100 (Idaho 1998); *Iowa v. Campbell*, 908 N.W.2d 539 (Iowa Ct. App. 2017); *Kansas v. Boyd*, 64 P.3d 419 (Kan. 2003).

their person, defeats the purpose of warrantless searches" because it would create an unworkable standard for law enforcement to determine what is searchable, leading to extensive litigation and suppression motions. The State contends that the cases from other jurisdictions relied upon by Edwards are inapposite to the current case because they involve instances where officers lacked probable cause to search the vehicle or confiscated a passenger's purse before they had probable cause to search the vehicle in which it was found. *See Kansas v. Boyd*, 64 P.3d 419, 427 (Kan. 2003) (distinguishing *Houghton*); *Iowa v. Campbell*, 908 N.W.2d 539 (Iowa Ct. App. 2017) (same).

[¶18.]     The Fourth Amendment of the United States Constitution and Article VI, § 11 of our State Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[2] Thus, "warrantless searches are unreasonable and therefore unconstitutional unless the search falls into one of the limited exceptions." *Steele*, 2000 S.D. 78, ¶ 5, 613 N.W.2d at 826 (citing *State v. Meyer*, 1998 S.D. 122, ¶¶ 21–27, 587 N.W.2d 719, 723–24).

[¶19.]     The United States Supreme Court has recognized an exception to the warrant requirement where "'contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant' where probable cause exists." *Houghton*, 526 U.S. at 300, 119 S. Ct. at 1301 (quotation

---

2.     Edwards challenges the search of her purse under the South Dakota Constitution and the Fourth Amendment of the United States Constitution, but does not argue that Art. VI, § 11 of the South Dakota Constitution provides greater protection than afforded by the Fourth Amendment of the United States Constitution.

omitted). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *U.S. v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173, 72 L. Ed. 2d 572 (1982). Thus, when a police officer has probable cause to search a vehicle, they "may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Houghton*, 526 U.S. at 307, 119 S. Ct. at 1304. However, probable cause to search a vehicle and its containers does "not justify a body search of a passenger." *Id.* at 303, 119 S. Ct. at 1302 (citing *Di Re*, 332 U.S. 581, 68 S. Ct. 222).

[¶20.]     Edwards does not challenge the determination that once law enforcement found contraband on the driver's person, they also had probable cause to search the vehicle and its containers. Edwards' sole contention is that her purse was intimately connected to her person and not subject to search.

[¶21.]     In *Houghton*, the driver of a vehicle was arrested after he admitted that a hypodermic needle found in his pocket was used to inject methamphetamine. *Id.* at 298, 119 S. Ct. at 1300. The defendant, a passenger in the vehicle, was removed to conduct a search of the vehicle. *Id.* Law enforcement searched the defendant's purse discovered inside the vehicle and found drug paraphernalia inside the purse. *Id.* *Houghton* concluded that the search of the passenger's purse was constitutional and "that such a package may be searched, whether or not its owner is present as a passenger or otherwise, because it may contain the contraband that the officer has reason to believe is in the car." *Id.* at 307, 119 S. Ct. at 1304. Relying on *Ross*, the Court stated, "[i]f probable cause justifies the search of a

lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *Id.* at 301, 119 S. Ct. at 1301 (quoting *Ross*, 456 U.S. at 825, 102 S. Ct. at 2173) (emphasis added).  Further, "our later cases describing *Ross* have characterized it as applying broadly to *all* containers within a car, without qualification as to ownership." *Id.*

[¶22.]     *Houghton* also reasoned that "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars, which 'trave[l] public throughfares,' 'seldom serv[e] as . . . the repository of personals effects,' are subjected to police stop and examination to enforce 'pervasive' government controls '[a]s an everyday occurrence,' and, finally, are exposed to traffic accidents that may render all their contents open to public scrutiny." *Id.* at 303, 119 S. Ct. at 1302 (alterations in original) (internal citations and quotations omitted).  In addition, the Court stated that during a traffic stop, a passenger's privacy interests are "considerably diminished, [whereas] the governmental interests at stake are substantial.  Effective law enforcement would be appreciably impaired without the ability to search a passenger's belongings . . . [because a] criminal might be able to hide contraband in a passengers' belongings as readily as in other containers in the car[.]" *Id.* at 304, 119 S. Ct. at 1302 (citations omitted).[3]  "A passenger's personal belongings, just like the driver's belongings or

---

3.     In a concurring opinion, Justice Breyer wrote that "[p]urses are special containers.  They are repositories of especially personal items that people generally like to keep with them at all times." *Houghton*, 526 U.S. at 308, 119 S. Ct. at 1304 (Breyer, J., concurring).  Based on this special relationship, Justice Breyer was "tempted to say that . . . if a woman's purse, like a man's billfold, were attached to her person . . ." that it "might then amount to a kind

(continued . . .)

containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car." *Id.* at 302, 119 S. Ct. at 1301 (citing *Ross*, 456 U.S. at 824, 102 S. Ct. at 2173).

[¶23.]    The State also cites *Steele* as an alternative basis to authorize the search of the vehicle and Edwards' purse, as a search incident to arrest. It is unnecessary to consider *Steele* to justify the search of the vehicle because there is no dispute that the officers had probable cause to search the vehicle in this instance.[4] However, *Steele* is instructive on the issue before us, that being the specific

_____

(. . . continued)

of 'outer clothing,' which under the Court's cases would properly receive increased protection." *Id.* (citation omitted). However, the United States Supreme Court has never adopted Justice Breyer's view, and this Court has rejected such a view, because it would blur the bright-line rule regarding searches of passenger's belongings and ignores the reality that passengers are often involved in the same activity as the driver and can easily hide incriminating evidence in their personal belongings that are on or near their person. *See Steele*, 2000 S.D. 78, ¶¶ 11–18, 613 N.W.2d at 828–30.

4.    The defendant in *Steele* was arrested on a probation violation and law enforcement subsequently searched the vehicle incident to the arrest. Like the case before us, the defendant passenger in *Steele* only challenged the search of her purse. She did not challenge the search of vehicle as a valid search incident to arrest. This reflected the widely accepted view, at the time, from *New York v. Belton* that an arrest automatically authorized a warrantless vehicle search incident to arrest to include "any object capable of holding another object," as well as "boxes, bags, clothing, and the like." *Id.* ¶ 6, 613 N.W.2d at 827 (quoting *New York v. Belton*, 453 U.S. 454, 460–61 n.4, 101 S. Ct. 2860, 2864 n.4, 69 L. Ed. 2d 768 (1981)). But in 2009, the United States Supreme Court clarified the *Belton* rule in *Arizona v. Gant*, 556 U.S. 332, 335, 129 S. Ct. 1710, 1714, 173 L. Ed. 2d 485 (2009). The Supreme Court held "that *Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Id.* Instead, *Gant* held that the "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* at 343, 129 S. Ct. at 1719 (citation omitted).

authority to search Edwards' purse in connection with an otherwise valid warrantless search.

[¶24.] On this question, *Steele*, like *Houghton*, correctly balanced the privacy claims associated with a person's purse with the need for a bright-line rule in cases where a warrantless search of a vehicle's passenger compartment is authorized. Requiring officers to determine whether a purse is sufficiently attached to an individual so that it is deserving of a heightened expectation of privacy would blur an established bright-line rule and would lead to the "seemingly inconsistent rulings caused by fact-driven analys[es]" that *Belton* and *Houghton* sought to eliminate. *Id.* ¶ 7, 613 N.W.2d at 827 (citation omitted). *See Belton*, 453 U.S. at 460, 101 S. Ct. at 2864.

[¶25.] The heightened interests of law enforcement to search a vehicle and its contents, based upon probable cause that contraband is in the vehicle, outweigh Edwards' diminished expectation of privacy in her personal belongings that she brought into the vehicle. *See Houghton*, 526 U.S. at 303, 119 S. Ct. at 1302 ("Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars[.]"). For these reasons, Edwards' purse was not entitled to a heightened expectation of privacy and was subject to the same search conditions as any other container found inside of the vehicle that was capable of concealing contraband.

[¶26.] We affirm.

[¶27.] KERN, SALTER, and DEVANEY, Justices, concur.

[¶28.] MYREN, Justice, dissents.

#30448

MYREN, Justice (dissenting).

[¶29.]     I agree that law enforcement was entitled to search the vehicle, given the drugs found on Pearman. Although the scope of a vehicle search includes passengers' belongings found in the car, it does "*not justify a body search of a passenger*." *Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S. Ct. 1297, 1302, 143 L. Ed. 2d 408 (1999) (citing *U.S. v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948) (emphasis added)).

[¶30.]     In *Houghton*, the passenger's purse was found on the backseat of the vehicle. 526 U.S. at 298, 119 S. Ct. at 1299. In contrast, Edwards had her purse on her lap when the car was stopped. Edwards kept the purse in her possession at all times. When asked to exit the vehicle, she took it from her lap and put it on her shoulder. When law enforcement told her they were going to search her purse, she denied consent and asserted they were not authorized to search the purse without a warrant. Law enforcement articulated no reason to believe her purse contained illegal drugs other than the fact that she was in the same car that Pearman had occupied. The majority opinion notes the "reality" that passengers are often involved in the same activity as the driver. In response, I note the reality that passengers are often NOT involved in the same activity as the driver.

[¶31.]     I fully understand that it would be more convenient for law enforcement if they are allowed to search everything whenever they stop a vehicle. However, the convenience of law enforcement should not eliminate Edwards' right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment. What makes this search unreasonable is that law enforcement had no

-12-

probable cause to believe Edwards was engaged in criminal activity. Because she always maintained possession of her purse, this is not a circumstance where a "criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car." *Id.* at 296, 119 S. Ct. at 1299 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 102, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980)).

[¶32.] My view is consistent with Justice Breyer's approach in *Houghton*. "Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times." *Id.* at 308, 119 S. Ct. at 1304 (Breyer, J., concurring). Edwards clearly viewed her purse in that way, as evidenced by the fact that she always kept it in her possession. Because law enforcement was not allowed to search her person and she always maintained direct control and possession of her purse, I would hold that law enforcement was not authorized to search her purse. For these reasons, I dissent.